2007 UT App 211

**PAPANIKOLAS BROTHERS ENTERPRISES, L.C.; and White Investment Co., Inc., Plaintiffs and Appellants,**

v.

**WENDY'S OLD FASHIONED HAMBURGERS OF NEW YORK, INC., Defendant and Appellee.**

No. 20060350–CA.

Court of Appeals of Utah.

June 21, 2007.

Todd J. Godfrey and Michael Z. Hayes, Salt Lake City, for Appellants.

Ronald G. Russell and Matthew J. Ball, Salt Lake City, for Appellee.

Before Judges BILLINGS, DAVIS, and THORNE.

## OPINION

BILLINGS, Judge:

¶ 1 Plaintiffs Papanikolas Brothers Enterprises, L.C. and White Investment Co., Inc. appeal the trial court's grant of summary judgment to Defendant Wendy's Old Fashioned Hamburgers of New York, Inc. (Wendy's). On appeal, Plaintiffs contend the trial court erred in interpreting the declaration of restrictions and grant of easements and in concluding that the statutes of limitations had run on Plaintiffs' breach of contract and trespass claims. We affirm in part and reverse and remand in part.

## BACKGROUND [1]

¶ 2 Plaintiffs and Wendy's are adjacent land owners in Salt Lake City, Utah. Plaintiffs own the Canyon Rim Shopping Center (the Shopping Center), and Wendy's owns property next to the Shopping Center (the Wendy's Property), on which it owns and operates a fast-food restaurant.

¶ 3 Both the Shopping Center and the Wendy's Property are located on land parcels described in a declaration of restrictions and grants of easements (the Declaration) recorded in 1982. The Declaration describes three distinct land parcels. The Declaration states that Plaintiffs own parcels one and two. The Wendy's Property is located within parcel three.

¶ 4 The Wendy's Property was originally developed in 1982 as a Burger King restaurant. Wendy's purchased the property in early 2003 and converted the Burger King restaurant to a Wendy's restaurant (the Restaurant).

¶ 5 The original development of the Wendy's Property in 1982 included construction

1. "In reviewing a grant of summary judgment, we ... view the facts and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *Sanders v. Leavitt*, 2001 UT 78, ¶ 1 n. 1, 37 P.3d 1052. "We recite the facts accordingly." *Id.*

of a drive-through lane on the north side of the Wendy's Property. As constructed, the drive-through lane was bound on the north by a narrow, landscaped island edged with concrete curbing and on the south by the Restaurant (we refer to the drive-through lane and the related island as the Drive–Through Facilities).

¶ 6 The Declaration limits the construction of buildings with drive-through traffic on parcel three, allowing such construction only when certain conditions are satisfied. Specifically, the Declaration states that

[n]o building featuring drive-in, drive-up or drive-through traffic shall be located on [p]arcel [t]hree, except as shown on the [p]lot [p]lan [ (the Plot Plan) ], without the prior written consent of the [o]wner of [p]arcel [t]wo and [the lessor of parcel one], including consent to the location of the drive-in, drive-up or drive-through lanes of such facility. Such consent will not be unreasonably withheld provided that the location of such lanes and the use thereof do not impede or inhibit access to and from and the conduct of business from the buildings in the Shopping Center or access to and from the adjacent streets.

¶ 7 The parties agree that the Plot Plan details the Drive–Through Facilities as two curved lines running from the northwest corner of the Restaurant to the northeast. They also agree that the Restaurant and the Drive–Through Facilities have, since the time of their construction, remained in the same location and configuration and have remained in continuous use.

¶ 8 In addition to the Restaurant and the Drive–Through Facilities, there are also a number of signs located on parcel three, including two pylon signs and two menu board signs (the Menu Board Signs). The Menu Board Signs and one of the parcel three pylon signs are located on the Wendy's Property. Although menu board signs have continuously existed on the Wendy's Property since 1982, Wendy's replaced one of the existing menu board signs and installed an additional menu board sign when it acquired the property in 2003. The Declaration limits the amount and type of signage permitted on parcel three. Specifically, the Declaration states that

[t]he [o]wner of [p]arcel [t]hree shall have the right to construct two(2) free-standing pylon, monument or other signs at the location designated on the Plot Plan as "Parcel Three Sign." No other pylon, monument or other free-standing sign shall be permitted on [p]arcel [t]hree without the prior written approval of all [o]wners and [the lessor of parcel one].

The Declaration also permits, without limit, the construction of directional signs within the designated common areas of each property parcel.

¶ 9 In 2004, Plaintiffs filed suit against Wendy's for breach of contract and trespass. In 2005, Plaintiffs filed an amended complaint, alleging that the Menu Board Signs are not permitted by the Declaration and therefore constitute a breach a contract; that the Drive–Through Facilities are not physically located "as shown on the Plot Plan" and therefore constitute a breach of contract; and that the Drive–Through Facilities, and patrons' continued use of those facilities, constitute a trespass. Plaintiffs also subsequently asserted that Wendy's committed trespass and breached the Declaration in maintaining landscaping on the Drive–Through Facilities and in constructing a new fence and sign on Plaintiffs' property.[2]

¶ 10 Wendy's moved for summary judgment on Plaintiffs' claims. The trial court granted Wendy's motion for summary judgment, concluding that: (1) the Drive–Through Facilities do not violate the Declaration, and thus do not constitute a trespass, because the Declaration "expressly authorizes [the] Drive[-]Through Facilities located on [p]arcel [t]hree as shown on the Plot Plan"; (2) even if the Drive–Through Facilities constituted a breach of contract or trespass, Plaintiffs' claims are barred by the relevant statutes of limitations; and (3) the Menu Board Signs do not violate the Declaration because the Declaration does not explicitly prohibit the signs and, moreover, be-

---

2. The parties and the record do not make clear whether the alleged fence and sign are located on the Drive–Through Facilities or elsewhere on Plaintiffs' property.

cause the Declaration expressly contemplates the operation of a drive-through restaurant on parcel three, the Declaration must have contemplated the erection of menu board signs—"an inherently necessary feature of modern drive through restaurants." The trial court thus denied Plaintiffs' claims for damages, awarded Wendy's "a declaratory judgment decreeing that the Menu Board Signs may remain in use in their present location and configuration," and "enjoin[ed P]laintiffs from taking any action to inhibit Wendy's from using and maintaining the Drive–Through Facilities and the Menu Board Signs in their present location and configuration." In accordance with a fee provision in the Declaration, the trial court awarded costs and attorney fees to Wendy's. The fee provision states that

> [i]n the event that legal proceedings are brought or commenced to enforce any of the terms of th[e] Declaration against any [o]wner or other party with an interest in the Shopping Center, the successful party in such action shall then be entitled to receive and shall receive from the defaulting [o]wner or party a reasonable sum as attorney [ ] fees and costs, to be fixed by the court in the same action.

In its findings of fact and conclusions of law, the trial court did not apparently consider Plaintiffs' claims concerning Wendy's alleged maintenance of landscaping within the Drive–Through Facilities and its purported installation of a new fence and sign on Plaintiffs' property.

¶ 11 Plaintiffs appeal.

## ISSUE AND STANDARD OF REVIEW

¶ 12 Plaintiffs argue that the trial court erroneously granted Wendy's motion for summary judgment because the court misinterpreted the Declaration as a matter of law and misapplied the statutes of limitations to Plaintiffs' breach of contract and trespass claims. It is well established that "[s]ummary judgment is appropriate only where (1) 'there is no genuine issue as to any material fact' and (2) 'the moving party is entitled to a judgment as a matter of law.'" *Poteet v. White*, 2006 UT 63, ¶ 7, 147 P.3d 439 (quoting Utah R. Civ. P. 56(c)). "In reviewing a grant ... of summary judgment, [we are] ... obligated to ... review the district court's legal conclusions, as well as the grant of summary judgment as a whole, for correctness." *View Condo. Owners Ass'n v. MSICO L.L.C.*, 2005 UT 91, ¶ 17, 127 P.3d 697. The trial court's interpretation of the Declaration and its application of the statutes of limitations constitute legal conclusions. *See Green River Canal Co. v. Thayn*, 2003 UT 50, ¶ 16, 84 P.3d 1134 ("The trial court's interpretation of a contract presents a question of law, which we review for correctness."); *Russell Packard Dev. v. Carson*, 2005 UT 14, ¶ 18, 108 P.3d 741 (" 'The applicability of a statute of limitations ... [is a] question [ ] of law, which we review for correctness.' " (quoting *Spears v. Warr*, 2002 UT 24, ¶ 32, 44 P.3d 742)).

## ANALYSIS

¶ 13 Plaintiffs argue that the trial court improperly granted Wendy's motion for summary judgment on Plaintiffs' claims of trespass and breach of contract. Specifically, Plaintiffs claim that the trial court erred in concluding as a matter of law that the Declaration permits the Menu Board Signs; that the Drive–Through Facilities do not violate the Declaration; and that the Drive–Through Facilities do not constitute a trespass. Plaintiffs also aver that the trial court incorrectly ruled that Plaintiffs' contract and trespass claims concerning the Drive–Through Facilities are time-barred by the relevant statutes of limitations, and that even if their trespass claim is time-barred, the trial court cannot prevent Plaintiffs from obtaining equitable relief to remove the trespass from their property. Plaintiffs further assert that the trial court erred in failing to consider their claims of trespass and breach of contract regarding the alleged maintenance of landscaping and the construction of a new fence and sign on Plaintiffs' property. Finally, Plaintiffs argue that the trial court improperly interpreted the Declaration in awarding costs and attorney fees to Wendy's.

### I. Menu Board Signs

¶ 14 Plaintiffs first contend that the trial court erred in determining as a matter

of law that the Declaration permits the Menu Board Signs. The Declaration provides:

> The [o]wner of [p]arcel [t]hree shall have the right to construct two(2) free-standing pylon, monument or other signs at the location designated· on the Plot Plan as "Parcel Three Sign." No other pylon, monument or other free-standing sign shall be permitted on [p]arcel [t]hree without the prior written approval of all [o]wners
>
> . . . .

Because the parties do not dispute that parcel three currently contains two pylon signs, Plaintiffs contend that the Menu Board Signs violate the Declaration in that they constitute "other free-standing sign[s]," installed without prior written approval, in excess of the number of signs permitted by the Declaration.

¶ 15 In contrast, Wendy's asserts that the Menu Board Signs do not violate the Declaration because they are not the type of signs prohibited under the Declaration. Specifically, Wendy's contends that the Menu Board Signs are directional in nature and thus not limited under the Declaration.

¶ 16 In determining that the Declaration does not prohibit the Menu Board Signs, the trial court appeared to adopt Wendy's classification of the Menu Board Signs as not constituting the type of signs—i.e., "pylon, monument or other free-standing"—limited under the Declaration without prior written approval.

¶ 17 In reviewing the Declaration, "[this court] interpret[s] the provisions of the Declaration as we would a contract." *View Condo. Owners Ass'n v. MSICO, L.L.C.*, 2005 UT 91, ¶ 21, 127 P.3d 697. In so doing, "the intention of the ... parties is controlling." *Peterson v. Sunrider Corp.*, 2002 UT 43, ¶ 18, 48 P.3d 918. Thus, "[i]f the language of the contract is unambiguous, the intention of the parties may be determined as a matter of law based on the language of the agreement." *Id.* But, "[i]f the contract is found to be ambiguous, the court may consider extrinsic evidence of the parties' intentions." *Id.* Ac-

cordingly, "a motion for summary judgment may not be granted if a legal conclusion is reached that an ambiguity exists in the contract and there is a factual issue as to what the parties intended." *Id.* at ¶ 14 (quotations and citation omitted). "A contract provision is ambiguous if it is capable of more than one reasonable interpretation because of uncertain meaning of terms, missing terms[,] or other facial deficiencies." *Id.* at ¶ 19 (quotations and citations omitted). "To demonstrate ambiguity, the contrary positions of the parties must each be tenable." *Plateau Mining Co. v. Utah Div. of State Lands & Forestry*, 802 P.2d 720, 725 (Utah 1990).

¶ 18 Unlike the trial court, we do not think the Declaration clearly supports Wendy's position that the Menu Board Signs are directional signs allowed under the Declaration. To the contrary, the Declaration · appears silent as to the parties' intent regarding the classification and limitation of menu board signs, and the agreement gives no indication as to why Plaintiffs' position that the Menu Board Signs are of a prohibited nature is not equally· tenable. Because "[we] ha[ve] determined that the [Declaration] is ambiguous and there are issues of fact regarding the intention of the parties, summary judgment may not be granted based on contract interpretation." *Peterson*, 2002 UT 43 at ¶ 29, 48 P.3d 918; *see also id.* ("Because the meaning of the contract ha[d] not yet been resolved, ... the trial court's reliance on one·construction of it to support summary judgment was improper."). Thus, we reverse the trial court's grant of summary judgment as to Plaintiffs' breach of contract claims regarding the Menu Board Signs and remand for an evidentiary hearing to determine what the parties to the Declaration must have intended as to the signs.[3]

## II. Drive–Through Facilities

¶ 19 Plaintiffs next contend that the trial court erred in determining as a matter of law that the Drive–Through Facilities do not violate the Declaration and thus do not constitute a trespass. Plaintiffs also claim that the

---

**3.** Because Wendy's installed the Menu Board Signs in 2003, Wendy's concedes that if the Menu Board Signs violate the Declaration, Plain-

tiffs' breach of contract claim regarding the Menu Board Signs is not time-barred.

trial court erred in deciding that Plaintiffs' contract and trespass claims concerning the Drive–Through Facilities are time-barred.

■ ¶ 20 We do not reach the issue of whether the trial court correctly interpreted the Declaration, as we agree with the trial court that Plaintiffs' trespass and breach of contract claims concerning the Drive–Through Facilities are time-barred. Plaintiffs' breach of contract claims are time-barred because the Drive–Through Facilities were constructed in 1982 and Plaintiffs did not file their breach of contract action alleging the facilities violated the Declaration until 2004, well beyond the relevant statute of limitations. *See* Utah Code Ann. § 78–12–23(2) (2002) ("An action may be brought within six years ... upon any contract.").

■ ¶ 21 Plaintiffs' trespass claims concerning the construction and patrons' use of the Drive–Through Facilities are also time-barred. Under Utah law, "[a]n action may be brought within three years ... for ... trespass upon or injury to real property." Utah Code Ann. § 78–12–26(1) (2002). Wendy's argues, and the trial court determined, that because the Drive–Through Facilities were first constructed in 1982, the alleged trespass is permanent and Plaintiffs' 2004 trespass claims concerning the Drive–Through Facilities are therefore time-barred. In response, Plaintiffs claim that the statute of limitations does not bar their claims because despite the Drive–Through Facilities' construction in 1982, Wendy's patrons' use of the Drive–Through Facilities and Wendy's alleged maintenance of landscaping within the facilities constitute a continuing, rather than a permanent, trespass.

■ ¶ 22 As this court recently noted, "[t]he distinction between a permanent and continuing trespass in Utah is defined in *Breiggar Properties, L.C. v. H.E. Davis & Sons, Inc.* [, 2002 UT 53, 52 P.3d 1133]." *Sycamore Family, L.L.C. v. Vintage on the River Homeowners Ass'n, Inc.*, 2006 UT App 387, ¶ 3, 145 P.3d 1177, *cert. denied,* 153 P.3d 185 (Utah 2007). In *Breiggar,* the Utah Supreme Court explained:

> "When a cause of action for nuisance or trespass accrues for statute of limitations purposes depends on whether the nuisance or trespass is permanent or continuing. Where a nuisance or trespass is of such character that it will presumably continue indefinitely it is considered permanent, and the limitations period runs from the time the nuisance or trespass is created. However, if the nuisance or trespass may be discontinued at any time it is considered continuing in character ... [and] the person injured may bring successive actions for damages until the nuisance [or trespass] is abated...."

2002 UT 53 at ¶ 8, 52 P.3d 1133 (first and third alteration in original) (quoting *Walker Drug Co. v. La Sal Oil Co.,* 902 P.2d 1229, 1232 (Utah 1995)). In determining whether a trespass is permanent or continuing, "we look solely to the *act* constituting the trespass, and not to the *harm* resulting from the act." *Id.* at ¶ 10. "Under this view, the difference between a permanent or continuing trespass is purely semantic." *Id.* at ¶ 11. "Once an *act* of trespass has occurred, the statute of limitations begins to run." *Id.* "If there are multiple acts of trespass, then there are multiple causes of action, and the statutes of limitations begins to run anew with each act." *Id.* Thus, "[w]e characterize a trespass as 'permanent' to acknowledge that the act or acts of trespass have ceased to occur[, and w]e characterize a trespass as 'continuing' to acknowledge that multiple acts of trespass have occurred, and continue to occur." *Id.*

¶ 23 Applying the above analysis, the court in *Breiggar* determined that the defendant's dumping of debris onto the plaintiff's property constituted a permanent trespass and that the statute of limitations began to run on the date of the dumping. *See id.* at ¶ 14. The court explained that "[t]he fact that the pile of debris continued to remain on [the plaintiff's] property, or the possibility that it could be reasonably abated is irrelevant to this conclusion." *Id.*

¶ 24 In *Sycamore Family, L.L.C. v. Vintage on the River Homeowners Ass'n, Inc.,* this court considered whether "underground pipes constitute[d] a continuing trespass because water and sewage ... flow through them on a continual basis." 2006 UT App

387 at ¶ 3, 145 P.3d 1177. We explained that such a "contention require[d the court] to consider the nature of the two components of the trespass ...: the pipes themselves and the contents of the pipes." *Id.* at ¶ 4.

> We ... conclude[d] that the pipes themselves [were] permanent trespasses because, far from being an intermittent invader, they ha[d] been a fixture on the land for several years, and their installation amount[ed] to a single act with a single impact on the land. Although the water and sewage flowing through the pipes were not part of the single act of installation, we conclude[d] that such contents d[id] not constitute a new trespass. "The essential element of trespass is physical invasion of the land," or in other words, there must be an "encroachment on the rights of another." Absent an allegation that the contents of the pipes ha[d] leaked or otherwise affected the land, the wholly enclosed contents of the pipes d[id] not constitute a new encroachment onto the land. Accordingly, regardless of whether the pipes [were] empty or full, the encroachment on [the p]laintiffs' rights to the property [was] the same.

*Id.* (citations omitted).

¶ 25 We conclude that, like the pile of rocks in *Breiggar* and the pipes in *Sycamore,* the act of constructing the Drive–Through Facilities was permanent in that "[its] installation amount[ed] to a single act with a single impact on the land." *Id.* We further conclude that each use of the Drive–Through Facilities by Wendy's patrons does not constitute a new act of trespass because, like the waste moving through the pipes in *Sycamore,* the patrons' alleged encroachment on Plaintiffs' property is "wholly enclosed" within the Drive–Through Facilities. *Id.* Accordingly, we uphold the trial court's determination that Plaintiffs' trespass claim regarding the Drive–Through Facilities is time-barred.

¶ 26 We remand, however, the issue of whether the alleged maintenance of landscaping within the Drive–Through Facilities and the newly-installed fence constitute new

or de minimis trespasses. The trial court did not address these claims below, and the record is insufficient for us to decide these issues on appeal.

## III. Injunction

¶ 27 Plaintiffs contend that the trial court erred in "enjoining [P]laintiffs from taking any action to inhibit Wendy's from using and maintaining the Drive[-]Through Facilities." Namely, Plaintiffs argue that although the statute of limitations may bar their trespass claim for damages, it does not prevent Plaintiffs from obtaining equitable relief to remove the trespass from their property. In raising this issue, Plaintiffs notably fail to cite any relevant authority to support their position.

¶ 28 Although, "[i]n addition to damages, [a] plaintiff may seek to stop the conduct that is creating the trespass," and although "issuance of an injunction to remove the encroachment remains discretionary with the court," 9 Richard R. Powell, *Powell on Real Property* § 64A.05[8] (Michael Allen Wolf ed.2007), the question here is whether an equitable remedy of removal is still available after the statute of limitations has run. The parties do not cite, and we do not find, any Utah law directly on point. In at least one state, however, courts have held that requests for injunctive relief for the removal of permanent trespasses on property are, like trespass claims, barred by the three-year statute of limitations. *See Field–Escandon v. DeMann,* 204 Cal.App.3d 228, 251 Cal. Rptr. 49, 52–53 (1988); *see also Troeger v. Fink,* 166 Cal.App.2d 22, 332 P.2d 779, 782, 783 (1958) (stating that "causes of action for damages and for injunctive relief accrue when the [permanent] trespass is committed and are barred three years thereafter" and that "[g]enerally, the running of an applicable statute of limitations will also bar equitable relief").[4]

¶ 29 This approach makes sense. After all, the three-year statute of limitations bars any trespass "action." Utah Code Ann. § 78–12–

---

4. The application of the three-year statute of limitations to bar removal of the permanent trespass is consistent with the distinction between a permanent and continuing trespass. Otherwise, the distinction is without consequence as to the removal.

26(1). Therefore, Plaintiffs cannot assert the trespass action that would support their remedy—regardless of whether that remedy is equitable or is for damages.[5]

¶ 30 Even if this were not the case, the Utah Supreme Court has held that "[e]quitable claims will be barred after the time fixed by the analogous statute of limitations unless extraordinary circumstances make the application unjust." *CIG Exploration, Inc. v. State*, 2001 UT 37, ¶ 11, 24 P.3d 966; *see also Hatch v. Hatch*, 46 Utah 116, 148 P. 1096, 1101 (1915) ("Generally, in the state courts, the statute of limitations applies to equitable as well as legal actions.").

### IV. Additional Trespass and Breach of Contract

Claim Regarding the Alleged New Sign

■ ¶ 31 Plaintiffs also assert that the trial court erred in failing to consider their trespass and breach of contract claims concerning the alleged construction of a new sign. We agree and remand for the trial court to consider this claim. In addressing this claim, the court will need to consider whether the sign is permitted under the Declaration. The court will also need to clarify where the sign is located, as the record is not clear.

### V. Attorney Fees and Costs

■ ¶ 32 In granting summary judgment to Wendy's, the trial court awarded attorney fees and costs to Wendy's pursuant to the Declaration. Plaintiffs contest this award, arguing that even if Plaintiffs are unsuccessful on all their claims, Wendy's is not entitled to fees and costs under the language of the Declaration. We determine the Declaration is ambiguous as to whether the parties intended the fee provision to apply in the present circumstances.

■ ¶ 33 "In Utah, attorney fees cannot be recovered unless authorized by statute or contract." *Shipman v. Evans*, 2004 UT 44,

¶ 22, 100 P.3d 1151. Here, the Declaration provides that:

> [i]n the event that legal proceedings are brought or commenced to enforce any of the terms of th[e] Declaration against any [o]wner or other party with an interest in the Shopping Center, the successful party in such action shall then be entitled to receive and shall receive from *the defaulting [o]wner or party* a reasonable sum as attorney [ ] fees and costs, to be fixed by the court in the same action.

(Emphasis added.) Plaintiffs contend that under the Declaration Wendy's is not entitled to fees and costs because Plaintiffs, even if unsuccessful in their claims, do not constitute a defaulting party, and that the contracting parties only intended the award of fees and costs when the party enforcing the Declaration is successful in such enforcement. Wendy's disagrees and instead claims that the contracting parties intended "defaulting ... party" to apply more broadly to allow fees in circumstances such as here where Plaintiffs were dilatory in bringing the majority of their claims. We conclude that the Declaration is unclear as to its terms, *see Peterson v. Sunrider Corp.*, 2002 UT 43, ¶ 18, 48 P.3d 918, and each party's interpretation tenable, *see Plateau Mining Co. v. Utah Div. of State Lands & Forestry*, 802 P.2d 720, 725 (Utah 1990), as to whether the fee provision applies. We therefore vacate the award and direct the trial court to determine, before awarding fees and costs on remand, whether the parties intended the fee provision to apply in the present circumstances.

### CONCLUSION

¶ 34 First, we affirm the trial court's conclusion that Plaintiffs' trespass and breach of contract claims are time-barred with regard to the Drive–Through Facilities. Second, because Plaintiffs' claims regarding the Drive–Through Facilities are time-barred, we affirm the trial court's decision to enjoin Plaintiffs from taking action to remove the Drive-

---

5. Notably, the courts in *Breiggar Properties, L.C. v. H.E. Davis & Sons, Inc.*, 2002 UT 53, 52 P.3d 1133, and *Sycamore Family, L.L.C. v. Vintage on the River Homeowners Ass'n, Inc.*, 2006 UT App 387, 145 P.3d 1177, gave no indication that equi-table relief to remove the permanent trespass was available to the property owner after the statute of limitations on the permanent trespass had run.

Through Facilities. Third, we reverse and remand the trial court's determination that the Declaration permits the Menu Board Signs. Fourth, we remand for the trial court to address Plaintiffs' trespass claims concerning Wendy's alleged maintenance of landscaping within the Drive–Through Facilities and its purported installation of a new fence on Plaintiffs' property. Fifth, we remand for the trial court to consider Plaintiffs' claims concerning the alleged newly-installed sign. Finally, we vacate the trial court's award of attorney fees and costs and direct the court to determine on remand whether the parties intended the fee provision to apply under the facts of this case.

¶ 35 WE CONCUR: JAMES Z. DAVIS and WILLIAM A. THORNE JR., Judges.