IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Jim Purkey and Jan Purkey, | ) | OPINION |
| | ) | |
| Plaintiffs, | ) | Case No. 20110365-CA |
| | ) | |
| v. | ) | |
| | ) | F I L E D |
| Jilene Roberts and Kent Max Roberts, | ) | (August 23, 2012) |
| | ) | |
| Defendants, Cross-claimants, and | ) | 2012 UT App 241 |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Dr. Roger Russell, | ) | |
| | ) | |
| Cross-defendant and Appellee. | ) | |

-----

Sixth District, Manti Department, 070600015
The Honorable Marvin Bagley

Attorneys:     Michael E. Day and Nathan Whittaker, Murray, for Appellant
               Charles W. Hanna, Orem, for Appellee

-----

Before Judges McHugh, Voros, and Roth.

McHUGH, Presiding Judge:

¶1     Jilene Roberts (Mrs. Roberts) appeals from the trial court's ruling that she waived her quiet title claim against Dr. Roger Russell, that Dr. Russell did not trespass on her property, and that she is not entitled to attorney fees. We reverse and remand.

BACKGROUND

¶2    Mrs. Roberts owns a parcel of property in rural Sanpete County (the Property).
She owned the Property as a joint tenant with right of survivorship with her husband,
Kent Max Roberts, until his death on April 5, 2010.  To the east of the Property is a
parcel of land owned by Jim and Jan Purkey.  Directly north of the Property is a parcel
of land owned by Dr. Russell.

¶3    In 1998, Mrs. Roberts signed a quitclaim deed, conveying a right of way over the
northern thirty-two feet of the Property to the Purkeys as an access road to the Purkeys'
property.  In 2002, the Robertses, the Purkeys, and several other property owners in
their subdivision signed and dedicated a plat map (the Plat Map), which indicated that
a thirty-two-foot wide strip of land would be dedicated as a street for the perpetual use
of the signatory land owners and for public safety access.[1]  The Plat Map described the
thirty-two-foot wide strip over the Property as an "Access Easement."  The location of
the road on the Plat Map differed from the right of way described in the quitclaim deed
to the Purkeys in that it crossed over the eastern boundary of the Property and diverged
from the thirty-two foot easement in several areas along the northern border.  In
addition to the access road, there is a barbed wire fence near the northern edge of the
Property.  Dr. Russell or his predecessors-in-interest built this fence between 1999 and
2002.

¶4    In January 2007, the Purkeys brought suit against the Robertses to resolve some
disputes regarding use of the access road.  In response, the Robertses commissioned a
survey (the Survey) to determine the legal boundaries of their property.  The Survey
revealed that the existing road diverted from the right of way and encroached upon the
east boundary of the Property and that Dr. Russell's fence encroached upon the
northern boundary of the Property by up to fourteen-and-a-half feet.

¶5    When Dr. Russell refused to move his fence despite the Survey, the Robertses
filed a motion for joinder and brought a cross-claim for quiet title and injunction against
him.  The Robertses sought an order quieting title according to the Survey and
prohibiting Dr. Russell from trespassing on the Property.  Without the assistance of
legal counsel, Dr. Russell answered the cross-claim but did not raise any affirmative

---

[1]Dr. Russell is not a signatory landowner.

defenses. Subsequently, Dr. Russell failed to respond to a motion for summary judgment filed by the Robertses, and the trial court entered judgment against him. At that point, Dr. Russell retained an attorney, who filed a motion to set aside the summary judgment. The Robertses opposed the motion, arguing that Dr. Russell had no legitimate defense because the Survey undisputedly established that his fence was trespassing on the Property.[2] Although the trial court set aside the summary judgment, it did so on the express condition that "[i]f [Dr. Russell] does not prevail in his defense, [the Robertses] shall be entitled to their reasonable attorney[] fees from the date of the Amended Order Granting Summary Judgment against [him]."

¶6    The case proceeded to a two-day bench trial in March 2010, during which the Robertses pursued their claims against the Purkeys related to the road and those arising out of the location of Dr. Russell's fence on the Property. During Mr. Roberts's testimony, the court asked him several questions and interpreted his answers as a partial waiver of the Robertses' claims against Dr. Russell, but it did not communicate this understanding at that time. When the Robertses' counsel argued in closing for "a quiet title to the north boundary according to the property description," the trial court responded that Mr. Roberts had waived any claims related to the encroachment of Dr. Russell's fence west of the Robertses' house. Counsel for the Robertses disagreed, stating that Mr. Roberts was "talking about the [access] easement" and that "to totally waive and relinquish his claim . . . would need to be clear and unequivocal and that would probably need to actually come through his attorney that was what he was intending on doing." The trial court was unpersuaded and ruled that the Robertses had waived their claims with respect to any encroachment by Dr. Russell's fence on the west side of the Robertses' home. After this exchange, counsel for Dr. Russell volunteered that he "heard Mr. Roberts say . . . there's no reason to do anything west of my house regarding that roadway or the easement either." Prior to the court's comment during closing argument, Dr. Russell had not claimed that Mr. Roberts's testimony indicated an intent to waive the quiet title and trespass claims relating to the fence's encroachment on the northwest portion of the Property.

¶7    After trial, the court issued Findings of Fact and Conclusions of Law, providing that "[Mr.] Roberts waived his claims for anything west of his house." However, it

---

[2]Dr. Russell did not challenge the accuracy of the Survey in the trial court or on appeal.

determined that "[t]he Roberts[es] [were] entitled to an order establishing the boundary line as shown on the Plat Map to the point east of the west line of [their] house." Accordingly, the trial court ordered that "[a]ny fences built on that portion of the property should be built on the property line." The trial court also determined that "[Dr.] Russell ha[d] not asserted any affirmative defenses . . . and [that] the evidence presented at trial [was] not sufficient for th[e] court to hold that the fence constitute[d] a boundary by acquiescence." In addition, the court stated that despite the fence's presence on the Property, there had been no "intentional trespass." Based on its substantive rulings, the trial court concluded that there was no prevailing party and that, therefore, neither party was entitled to attorney fees.

¶8      After her husband's death, Mrs. Roberts brought a motion to amend or alter judgment, arguing that she had not waived her claims against Dr. Russell to the west of the house, that she had proved the trespass claim against Dr. Russell, and that she was entitled to an order quieting title and directing Dr. Russell to remove the fence on the entire northern border of the Property. In addition, Mrs. Roberts argued that she had prevailed on the claims and was therefore entitled to attorney fees under the trial court's prior order setting aside the summary judgment.

¶9      The trial court refused to amend or alter its ruling. First, it reaffirmed that Mr. Roberts had waived the claims for encroachment on the Property west of the house. The court reasoned that the land was "essentially featureless" and that "[b]ecause of the existing graveled road, any movement of the dividing fence line seem[ed] pointless." It also rejected the argument that Mr. Roberts could not waive Mrs. Roberts's claims, explaining that if Mrs. Roberts disagreed with her husband's statements, she had an obligation to express that disagreement at trial. Finally, the court explained that both it and Dr. Russell had relied upon Mr. Roberts's waiver at trial. Second, the court renewed its conclusion that the Robertses had not proved trespass, stating that "such a claim . . . require[d] a factual showing that the trespass of Dr. Russell [was] . . . wrongful" and that it had found "no evidence of that." The trial court further reasoned that because the fence was located on the portion of the Property subject to a general easement for the road, Dr. Russell "had the right to be on that property as well as anyone else." In addition, it indicated that the Robertses should have objected to the placement of the fence when Dr. Russell's contractor was erecting it. Third, the trial court again declined to award attorney fees to either party but made a specific finding that Dr. Russell had succeeded in his defense against the Robertses. Mrs. Roberts timely appealed.

ISSUES AND STANDARDS OF REVIEW

¶10    On appeal, Mrs. Roberts contends that the trial court erred in concluding that she waived her claims against Dr. Russell for trespass and to quiet title to the northern boundary of the Property west of her home.  Whether a party has waived a claim is a mixed question of law and fact.  *Cf. Smile Inc. Asia Pte. Ltd. v. BriteSmile Mgmt., Inc.*, 2005 UT App 381, ¶ 20, 122 P.3d 654.  We review the trial court's application of the waiver standard for correctness, but we afford the trial court some deference in its factual determinations supporting or refuting waiver.  *See id.* (quoting *Pledger v. Gillespie*, 1999 UT 54, ¶ 16, 982 P.2d 572).

¶11    Next, Mrs. Roberts challenges the trial court's determination that Dr. Russell did not trespass on her property.  Whether the trial court applied the proper legal standard for trespass is an issue of law, which we review for correctness.  *See Carter v. Done*, 2012 UT App 72, ¶ 7, 276 P.3d 1127.

¶12    Finally, Mrs. Roberts contends that the trial court erred by not awarding her attorney fees.  "Whether attorney fees should be awarded in a particular case is a question of law, reviewed for correctness."  *Posner v. Equity Title Ins. Agency, Inc.*, 2009 UT App 347, ¶ 9, 222 P.3d 775.


ANALYSIS

I.  Waiver

¶13    First, Mrs. Roberts argues that the trial court erred in determining that she waived her claims of quiet title and trespass with respect to the northern boundary of the Property west of her home.[3]  The Utah Supreme Court has held that "waiver is the intentional relinquishment of a known right."  *See IHC Health Servs., Inc. v. D & K Mgmt., Inc.*, 2008 UT 73, ¶ 16, 196 P.3d 588 (citing generally *Soter's, Inc. v. Deseret Fed.*

---

[3]Dr. Russell argues that Mrs. Roberts failed to marshal the evidence in her opening brief.  However, Mrs. Roberts has challenged only the legal question of whether the "facts upon which the waiver is based [that] are not in dispute and [are] plain from the record" can support a waiver of the Robertses' claims as a matter of law.

*Sav. & Loan Ass'n*, 857 P.2d 935, 939-42 (Utah 1993)). Waiver will be established if it is shown "that the plaintiff had (1) an existing right, (2) knowledge of its existence, and (3) an intent to relinquish the right." *Id.* (citing *Soter's*, 857 P.2d at 940). "'[W]aiver must be distinctly made, although it may be express or implied,'" *id.* (alteration in original) (quoting *Soter's*, 857 P.2d at 942), and can be found where "'the totality of the circumstances warrants the inference of relinquishment,'" *id.* (quoting *IHC Health Servs., Inc. v. D & K Mgmt., Inc.*, 2003 UT 5, ¶ 7, 73 P.3d 320) (additional internal quotation marks omitted).

¶14  Although waiver is a fact-intensive issue, *see id.*, the trial court here based its waiver determination solely on Mr. Roberts's response to the trial court's questions at trial and Mrs. Roberts's failure to refute her husband's statements. We agree with Mrs. Roberts that these statements do not evince a distinctly made, intentional relinquishment of the Robertses' quiet title or trespass claims against Dr. Russell. Reviewing the testimony in context reveals that Mr. Roberts was referring only to the claims and defenses against the Purkeys regarding the road. Mr. Roberts testified as follows:

> The Court:  Mr. Roberts, in this lawsuit—well, let's look at that exhibit that's up there right now. From your house going west do you claim that Mr. Purkey is responsible for that road being off where it should be?
>
> [Mr. Roberts]:  No, sir.
>
> The Court:  So you[r] only concern in this lawsuit is from your house going east?
>
> [Mr. Roberts]:  Going east. I put that road in, sir.

¶15  The court's first question is expressly focused on the Robertses' claim against the Purkeys relating to the location of the road. Although the court's second question is so broadly worded that it could be interpreted to include all claims in the lawsuit relating to the west side of the northern boundary line, it does not expressly do so. Furthermore, Mr. Roberts's response, "Going East. I put that road in sir," indicates that he interpreted the question as relating to the location of the road. Thus, Mr. Roberts's statements in response to the trial court's questions do not support an inference of an

intentional relinquishment of a known right against Dr. Russell as a matter of law. Furthermore, Dr. Russell has not pointed us to any other evidence indicating that the Robertses intended to waive their claims with respect to the encroachment of Dr. Russell's fence on the northwest portion of the Property. Accordingly, we reverse the trial court's conclusion that the Robertses waived those claims.

## II. Quiet Title

¶16     Mrs. Roberts contends that she was entitled to an order quieting title to the Property according to the Survey boundaries, including those indicated on the west side of the home. To prevail on her quiet title claim, Mrs. Roberts needed only to "make a prima facie showing that [she had] title which, if not overcome by [Dr. Russell, was] sufficient." *See Thornock v. Cook*, 604 P.2d 934, 936 n.3 (Utah 1979); *Gillmor v. Blue Ledge Corp.*, 2009 UT App 230, ¶ 14, 217 P.3d 723 (same). The trial court acknowledged that the Survey was undisputed, thereby establishing prima facie evidence that the Robertses owned the real property upon which Dr. Russell's fence was located, on both the east and west side of the house. In addition, the trial court determined that the evidence was insufficient to establish boundary by acquiescence, and Dr. Russell has not advanced any other theory under which he might have obtained title to that portion of the Property. Thus, the Robertses met their burden at trial, and Mrs. Roberts is entitled to an order quieting title in the Property according to the undisputed boundaries established by the Survey.

## III. Trespass

¶17     Next, Mrs. Roberts argues that the trial court erred in denying her claim of trespass against Dr. Russell. A person is liable for trespass when, without permission, he "intentionally 'enters land in the possession of [another], or causes a thing or a third person to do so.'" *Carter v. Done*, 2012 UT App 72, ¶ 17, 276 P.3d 1127 (alteration in original) (quoting Restatement (Second) of Torts § 158(a) (1965)); *see also* Restatement (Second) of Torts § 158 cmt. c (1965) ("The word 'intrusion' is used throughout the Restatement of this [s]ubject to denote the fact that the possessor's interest in the exclusive possession of his land has been invaded by the presence of a person or thing upon it without the possessor's consent."). The phrase "'enters land'" includes "'the presence upon the land of a . . . thing which the actor has caused to be or to remain there.'" *See Carter*, 2012 UT App 72, ¶ 17 (emphasis omitted) (quoting Restatement (Second) of Torts § 158 cmt. b (1965)); *see also* Restatement (Second) of Torts § 158(c)

(1965) (stating that one is liable for trespass if he intentionally "fails to remove from the land a thing which he is under a duty to remove"); *Carter*, 2012 UT App 72, ¶ 41 (McHugh, J., dissenting) (same).

¶18    In this case, the trial court denied the Robertses' claim on the ground that they failed to show that Dr. Russell's actions were wrongful. While trespass has been defined in Utah as "a wrongful entry . . . upon the lands of another," our supreme court has long recognized that "[i]n law every entry upon the soil of another, in the absence of lawful authority, without the owner's license, is a trespass." *See O'Neill v. San Pedro, L.A. & S.L.R. Co.*, 38 Utah 475, 114 P. 127, 128 (1911) (internal quotation marks omitted). Therefore, while it is required that the entry onto the particular land be intentional, "'[i]t is not necessary that [the alleged trespasser] intend to invade the possessor's interest in the exclusive possession of his land and, therefore, that he know his entry to be an intrusion.'" *See Gallegos v. Lloyd*, 2008 UT App 40, ¶ 11, 178 P.3d 922 (quoting Restatement (Second) of Torts § 164 cmt. a (1965)).

¶19    Because Dr. Russell's fence encroached on the Property and because he refused to remove it despite the Survey, he is liable for trespass. This is true regardless of whether he knew the fence was on the Property when it was built and irrespective of whether the Robertses suffered any harm other than to their legally protected interest. *See* Restatement (Second) of Torts § 158; *see also id.* § 163 ("One who intentionally enters land in the possession of another is subject to liability to the possessor for a trespass, although his presence on the land causes no harm to the land, its possessor, or to any thing or person in whose security the possessor has a legally protected interest."); *id*. § 163 cmt. b (1965) (explaining that it is "immaterial whether or not [the actor] honestly and reasonably believes that the land is his own").

¶20    Whether the trespasser had a wrongful intent becomes relevant only where a property owner seeks punitive damages. *See Gallegos*, 2008 UT App 40, ¶¶ 10-11; *see also* Restatement (Second) of Torts § 163(e) (1965) (explaining that the actor's "complete disregard of the possessor's legally protected interest in the exclusive possession of his land" may "justify the imposition of punitive in addition to nominal damages for even a harmless trespass"). Here, Mrs. Roberts does not seek damages, punitive or otherwise. Instead, she requests that Dr. Russell be ordered to remove the fence from the Property. *See generally Papanikolas Bros. Enters., LC v. Wendy's Old Fashioned Hamburgers of New York, Inc.*, 2007 UT App 211, ¶ 28, 163 P.3d 728 (noting that a "plaintiff may seek to stop

the conduct that is creating the trespass" by requesting an order enjoining the trespasser to remove the encroachment (internal quotation marks omitted)).

¶21    Ultimately, the decision of whether to issue an injunction remains within the discretion of the trial court. *See Culbertson v. Board of Cnty. Comm'rs*, 2001 UT 108, ¶ 57, 44 P.3d 642 ("Inasmuch as plaintiffs have sought injunctive relief and damages in their complaints, the trial court is accorded latitude in fashioning an appropriate remedy."); *see also Papanikolas*, 2007 UT App 211, ¶ 28 ("[I]ssuance of an injunction to remove the encroachment remains discretionary with the court." (internal quotation marks omitted)).  Furthermore, the "common law generally requires a balancing of the parties' equitable interests before awarding permanent injunctive relief." *Johnson v. Hermes Assocs., Ltd.*, 2005 UT 82, ¶ 32, 128 P.3d 1151.  In balancing these interests,

> the district court may in its discretion elect not to grant an injunction only "where an encroachment does not irreparably injure the plaintiff; was innocently made; the cost of removal would be disproportionate and oppressive compared to the benefits derived from it, and [the] plaintiff can be compensated by damages."

*Carrier v. Lindquist*, 2001 UT 105, ¶ 31, 37 P.3d 1112 (emphasis omitted) (quoting *Papanikolas Bros. Enters. v. Sugarhouse Shopping Ctr. Assocs.*, 535 P.2d 1256, 1259 (Utah 1975)).  Because the trial court held that Dr. Russell did not trespass on the Property, it did not consider these factors.  Therefore, we must remand for the trial court to determine the appropriate remedy.

¶22    We are likewise unpersuaded that the fence was not a trespass because it was on a portion of the Robertses' property that was subject to the easement.  Even if we assume that the fence was located within the easement and that Dr. Russell was entitled to the benefit of that easement, which Mrs. Roberts disputes, there was no evidence presented that could support a conclusion that the fence was consistent with the easement's purposes of access for the signatories to the Plat Map and public safety. Generally, use of an easement may not exceed its scope. *See Wykoff v. Barton*, 646 P.2d 756, 758 (Utah 1982) ("[I]t is clear that a right-of-way founded on a deed or grant is limited to the uses and extent fixed by the instrument.").  While easement holders may make incidental uses beyond the scope of the easement if they are "made in a reasonable manner and they do not cause unnecessary injury to the servient owners,"

*see Conatser v. Johnson*, 2008 UT 48, ¶ 21, 194 P.3d 897 (internal quotation marks omitted), Dr. Russell has not advanced any explanation of how placing a barbed-wire fence on the easement designed for access and safety is either incidental or reasonable, *but cf. Wykoff*, 646 P.2d at 759 (holding that a servient landowner could construct a fence for agricultural use across a right of way easement where it was necessary and did not unreasonably interfere with the easement owners' ingress and egress).

¶23    The trial court's last rationale for concluding that there had been no trespass was that the Robertses should have objected at the time the fence was built. But this reasoning seems at odds with the trial court's finding that, until the Survey was completed in 2007, the parties thought the fence marked the legal boundary between the two properties. Because the Robertses were unaware that the fence was on their Property when it was built, they had no reason to object to its location.

¶24    Accordingly, we reverse the trial court's ruling that there is no trespass and remand for the trial court to determine the appropriate remedy.

IV. Attorney Fees

¶25    Finally, Mrs. Roberts contends that the trial court erred in determining that Dr. Russell was the prevailing party and in denying her request for attorney fees. Ordinarily, "attorney fees are not recoverable by a prevailing party unless authorized by statute or contract." *Gallegos v. Lloyd*, 2008 UT App 40, ¶ 8, 178 P.3d 922 (internal quotation marks omitted). Although there are several exceptions to this rule, *see id.*, Mrs. Roberts does not argue that they are applicable here. Instead, she asserts that the trial court erred by refusing to enforce its prior order that Dr. Russell pay her attorney fees if he did not prevail in the action.

¶26    Based on our determination that Mrs. Roberts did not waive her claims against Dr. Russell regarding the fence's encroachment on the west side of the home and that trespass does not require a showing of wrongfulness, we agree with Mrs. Roberts that Dr. Russell has not prevailed. Under these circumstances, the trial court's order setting aside summary judgment provides that Mrs. Roberts is entitled to her reasonable attorney fees from the date of that judgment forward. Thus, we remand to the trial court to reconsider whether Mrs. Roberts is entitled to her attorney fee, in light of our decision and Mrs. Roberts's reliance on the court's prior order.

CONCLUSION

¶27　　Mrs. Roberts did not waive her claims against Dr. Russell relating to the west side of the home.　She has proved both her quiet title claim and her allegation that Dr. Russell's fence is trespassing on the Property.　Therefore, we remand for the entry of an order quieting title according to the Survey, the imposition of the appropriate remedy for trespass, and the determination of whether Mrs. Roberts is entitled to her attorney fees under the trial court's prior order because Dr. Russell did not prevail in the defense of her claims.

¶28　　Reversed and remanded for further proceedings consistent with this decision.


_____
Carolyn B. McHugh,
Presiding Judge


-----


¶29　　WE CONCUR:


_____
J. Frederic Voros Jr.,
Associate Presiding Judge


_____
Stephen L. Roth, Judge