2011 UT App 389

Kim DAHL, Plaintiff and Appellant,

v.

Brian C. HARRISON, an individual; and Brian C. Harrison, P.C., a Utah professional corporation, Defendant and Appellee.

No. 20100553–CA.

Court of Appeals of Utah.

Nov. 10, 2011.

Steve S. Christensen and Benjamin Lusty, Salt Lake City, for Appellant.

Ben W. Lieberman, Salt Lake City, for Appellee.

Before Judges ORME, VOROS, and CHRISTIANSEN.

## OPINION

ORME, Judge:

¶ 1 Kim Dahl (Client) sued Brian C. Harrison and Brian C. Harrison, P.C. (collectively

Lawyer), for legal malpractice. Following a bench trial in October 2009, the trial court entered judgment in favor of Lawyer and dismissed the case. Client now appeals several of the trial court's rulings in that suit. We vacate the court's award of attorney fees but affirm as to all other issues.

## BACKGROUND

¶ 2 In October 2007, Client filed this legal malpractice suit against Lawyer related to Lawyer's representation of her in a divorce suit. In November 2007, Lawyer filed a motion to disqualify Client's counsel, which was ultimately resolved by stipulation in February 2008. Neither party sought to stay the proceedings pending the outcome of the motion to disqualify.

¶ 3 In November 2007, Client drafted a scheduling order and Lawyer agreed to it. In January 2008, the trial court approved the scheduling order, which established a deadline of April 7, 2008, for the completion of fact discovery and a deadline of May 5, 2008, for Client's expert witness disclosures. Lawyer pursued discovery prior to the April 7 deadline. Client, in contrast, served her first discovery requests on April 7. Lawyer then filed a motion for protective order asking the court to rule that Lawyer was not required to respond to the discovery requests because he could not do so within the discovery period.

¶ 4 On May 15, 2008, Client filed a motion to amend the scheduling order, asking the trial court to extend all discovery deadlines for three months. At an August 2008 hearing, the court extended the deadline for Client's expert disclosures to September 8, 2008. At the same hearing, the court granted Lawyer's motion for protective order and denied Client's motion to extend the deadline for fact discovery. The court found that Client had been dilatory in pursuing discovery and that her request to extend the deadline was not founded in fact or reason. The court also noted that Lawyer had clean hands, had pursued discovery, had a right to rely on the scheduling order, and would be prejudiced by delay. The court's subsequent

written ruling states, "To the extent this motion requested modification of the fact discovery deadline, it is denied for failure to show good cause."

¶ 5 On September 8, 2008, Client submitted her expert disclosures and reports. Two days later, Lawyer notified Client that the expert reports were inadequate and asked for a response by September 12. In response to Lawyer's request to meet and confer, Client contacted Lawyer on September 15, but Lawyer had already mailed to the court his "Motion To Strike Plaintiff's Expert Disclosures and Reports Pursuant to Utah R. Civ. P. 37(f)." [1] That motion to strike argued that the expert disclosures were "grossly deficient."

¶ 6 At a December 2008 hearing, the trial court granted Lawyer's motion to strike Client's expert disclosures and denied Client's oral request to file an amended report from Martin Olsen, one of Client's proposed experts. Client asked at that time whether the court would consider a motion for leave to amend the expert reports and the court "strongly hinted" that it would deny such a motion.

¶ 7 In January 2009, Client filed her "Motion To Allow Testimony of Expert Witnesses at Trial" and, alternatively, requested an extension of time in which to file expert disclosures, on the basis that no prejudice would result to Lawyer because the trial had not yet been scheduled. At a March 2009 hearing, Client acknowledged that the arguments in her pending motion and in her opposition to the previous motion to strike were identical but stated that the requests for relief were not identical. Specifically, Client's written opposition to the motion to strike asked the court for "sufficient time to revise her expert reports," and she also requested leave to file an amended report from Martin Olsen during the December 2008 hearing. In contrast, the new motion asked the court to allow Client's experts to testify at trial. The trial court rejected this argument, stating that "as a natural result, [striking the experts' reports] disallows [the experts'] testimony. You can't put [the experts] on [to testify] if [the opposing party

---

1. The motion to strike the expert disclosures is file-stamped September 18, 2008.

hasn't] had notice." Client responded that because the court "did not make that statement at the hearing[, t]he Court has not ruled on that issue," i.e., the issue of whether Client's experts could testify at trial.

¶ 8 The trial court denied both aspects of the motion,[2] stating that (1) it found no basis on which to grant Client more time to disclose experts, and (2) it found no basis to allow Client to introduce expert testimony at trial because rule 37(g) of the Utah Rules of Civil Procedure "clearly and unequivocally requires proper disclosure as a condition precedent to admission of evidence." In addition, the court awarded costs and attorney fees to Lawyer, finding that Client's "Motion To Allow Testimony of Expert Witnesses at Trial" was frivolous and that it was "in essence a motion for reconsideration of the Court's prior order striking Plaintiff's expert disclosures."

¶ 9 In June 2009, the trial court bifurcated the trial into two issues—(1) liability and (2) causation and damages—and scheduled a bench trial for October 2009. After presentation of evidence on the issue of liability, the court found in favor of Lawyer on each of Client's claims.

## ISSUES AND STANDARDS OF REVIEW

¶ 10 Client argues that the trial court abused its discretion by (1) granting Lawyer's motion to strike expert witnesses without giving Client leave to amend the expert witness reports, (2) denying Client's motion to allow her experts to testify at trial and her alternative motion to extend the deadline for expert disclosures, and (3) granting Lawyer's motion for a protective order and denying Client's motion to extend factual discovery.

■ ¶ 11 We review discovery rulings for an abuse of discretion. *See Welsh v. Hospital Corp. of Utah*, 2010 UT App 171, ¶ 9, 235 P.3d 791 ("Trial courts have broad discretion in managing the cases assigned to their courts.") (citation and internal quotation marks omitted). Rule 16 of the Utah Rules of Civil Procedure allows the court to set

dates for the completion of fact discovery and expert discovery, *see* Utah R. Civ. P. 16(b)(3), and to impose sanctions on parties who violate discovery rules or orders, *see* Utah R. Civ. P. 16(d) ("If a party or a party's attorney fails to obey a scheduling or pretrial order, ... the court ... may take any action authorized by Rule 37(b)(2)."). We likewise review the imposition of discovery sanctions for abuse of discretion. *See Welsh*, 2010 UT App 171, ¶ 9, 235 P.3d 791 ("[W]e will then only disturb [a] discovery sanction if abuse [of discretion] [is] *clearly* shown.") (emphasis and last alteration in original) (citation and internal quotation marks omitted).

■ ¶ 12 Client also argues that the trial court improperly awarded attorney fees as a sanction against Client for filing her motion to allow expert testimony at trial. We review whether a litigant is entitled to attorney fees pursuant to a particular express provision for correctness. *See Fisher v. Fisher*, 2009 UT App 305, ¶ 8, 221 P.3d 845 (giving no deference to the trial court's determination as to whether attorney fees were allowed under a statute), *cert. denied*, 230 P.3d 127 (Utah 2010). If a court awards attorney fees pursuant to its equitable powers, we review the award for abuse of discretion. *See id.*

## ANALYSIS

### I. Motions Related to Expert Witnesses

¶ 13 Client argues that the trial court abused its discretion by granting Lawyer's motion to strike the expert witnesses without leave to amend. Client also argues that the trial court abused its discretion by denying Client's motion to allow her experts to testify at trial and, alternatively, by denying her request for an extension of time to amend her expert disclosures.

■ ¶ 14 Client did not challenge Lawyer's argument, as articulated in his motion to strike, that Client's expert reports were inadequate—and rightfully so. However, in opposing the motion to strike, Client argued that a discovery sanction was inappropriate

---

2. The trial court ruled from the bench at the March 2009 hearing and subsequently entered a written order dated April 14, 2009.

because Lawyer had not attempted to meet and confer and because there was no showing of willfulness, bad faith, or prejudice because the matter had not been set for trial. In her brief, Client mentions in passing that the trial court "should have at the very least required the moving party to comply with Rule 37(a) and the duty to meet and confer informally before seeking discovery sanctions." She does not develop that argument on appeal, however, and we will not consider it here.[3] *See Russell v. Thomas*, 2000 UT App 82, ¶ 9 n. 9, 999 P.2d 1244 (declining to address an issue where, "except for [a] brief reference, defendants do not develop the argument and cite no authority therefor[ ]"). Instead, Client focuses on her stronger arguments that the remedy of excluding the witnesses was improper and that the trial court abused its discretion by granting the motion to strike without leave to amend. Similarly, she argues that the court erred by not allowing Client's subsequent motion to extend the time to allow Client to amend her expert disclosures, which was raised as an alternative to her motion to allow her experts to testify at trial.

¶ 15 In support of her arguments that the trial court should have allowed her more time for expert disclosures or to amend her expert reports, Client states that she met the deadline for expert disclosures set by the court and that unless the court "found [Client] was willful, acted in bad faith, or used persistent dilatory tactics that frustrated the judicial process," it should not have excluded Client's expert witnesses. *See Welsh v. Hospital Corp. of Utah*, 2010 UT App 171, ¶ 9, 235 P.3d 791 ("Before a trial court can impose discovery sanctions under rule 37, the court must find on the part of the noncomplying party willfulness, bad faith, ... fault, or persistent dilatory tactics frustrating the judicial process.") (alteration and omission in original) (citation and internal quotation marks omitted). Client also contends that extending the expert disclosure deadline would not prejudice Lawyer because the trial date had not been set and there was ample time to depose experts. Client insists that the court's ultimate decision was fatal to Client's case and "essentially gutted her legal malpractice claim." Under these circumstances, and because the sanction of exclusion is "extreme in nature and ... should be employed only with caution and restraint," *id.* ¶ 10 (omission in original) (citation and internal quotation marks omitted), Client contends that the court imposed an excessive remedy when it excluded her expert witnesses.

¶ 16 We disagree with Client's statement that she met the deadline for expert disclosures set by the trial court. A proper designation of experts includes the submission of an appropriate expert report. *See* Utah R. Civ. P. 26(a)(3)(B).[4] Client does not challenge the court's conclusion that the expert reports were inadequate. Because Client's expert reports were clearly inadequate, her expert disclosures cannot be regarded as timely. Regarding Client's argument that the court was required to find bad

---

3. Client's reply brief raises the argument that Lawyer failed to comply with the letter or the spirit of rule 37(a)(2)(A) of the Utah Rules of Civil Procedure because his motion to strike did not contain a certification that he had attempted to confer with Client to obtain the disclosures. As a result, Client contends that the court abused its discretion by punishing Client for failing to comply with the Utah Rules of Civil Procedure "without requiring compliance by [Lawyer]." Because Client raised the certification issue for the first time in her reply brief, we will not consider it. *See Allen v. Friel*, 2008 UT 56, ¶ 8, 194 P.3d 903 ("It is well settled that issues raised by an appellant in the reply brief that were not presented in the opening brief are considered waived and will not be considered by the appellate court.") (citation and internal quotation marks omitted).

4. The Utah Rules of Civil Procedure provide that a party "shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Utah Rules of Evidence," which govern expert testimony. Utah R. Civ. P. 26(a)(3)(A). This disclosure

> *shall ... be accompanied* by a written report ... contain[ing] the subject matter on which the expert is expected to testify; the substance of the facts and opinions to which the expert is expected to testify; a summary of the grounds for each opinion; the qualifications of the witness ...; the compensation to be paid for the study and the testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

*Id.* R. 26(a)(3)(B) (emphasis added).

faith, willfulness, or persistent dilatory tactics before imposing such a severe sanction, we note that the trial court expressly found that Client had demonstrated a "willful failure ... to carry this case forward and to obey the orders of the court."

¶ 17 Client also contends that the trial court erred by "placing any inconvenience to [Lawyer] in extending discovery ahead of the extreme prejudice to [Client]." In support, she relies on *Dugan v. Jones*, 615 P.2d 1239 (Utah 1980), which she contends is factually similar to Client's circumstances.[5] However, the pertinent holding of that case has been superceded by rule. *See Arnold v. Curtis*, 846 P.2d 1307, 1309–10 (Utah 1993) (explaining that *Dugan* "was decided prior to the 1987 amendment of rule 16 [of the Utah Rules of Civil Procedure,] which added the language providing for [sanctions]," and that "[t]he amendment [also] reinforces rule 16's intention to encourage forceful judicial management") (citation and internal quotation marks omitted). Therefore, *Dugan* does not help Client.

¶ 18 "Excluding a witness from testifying is ... extreme in nature and ... should be employed only with caution and restraint." *Welsh*, 2010 UT App 171, ¶ 10, 235 P.3d 791 (omissions in original) (citation and internal quotation marks omitted). In *Welsh*, we concluded that the trial court had erred by declining to extend the deadline for completion of expert discovery. *See id.* ¶ 19. However, we acknowledged that a number of factors distinguished that case from the usual case involving exclusion of witnesses, including the following:

> [T]he case was nearly three years old; four scheduling orders had been entered; both parties had contributed to discovery delays; the parties had been warned that no further discovery extensions would be granted and that if the case did not move

forward it would be dismissed; new counsel ... entered their appearance five days before December 1, the date expert reports and designations were due; that same day new counsel filed a motion to extend the expert witness cutoff date to January 9; the requested extension would not have affected the trial date; on December 17, the Welshes designated their experts; on December 29, the court clerk made an entry on the court's docket indicating that the Welshes' motion had been granted and that the clerk had called the Welshes' counsel and directed them to submit a proposed order; the Welshes' counsel submitted a proposed order, which Lakeview's counsel approved as to form; in reliance on the clerk's phone call, the Welshes spent considerable time and expense in completing their expert reports, which they filed by the new deadline, January 9; Lakeview suffered no prejudice as a result of the thirty-nine-day delay, whereas the Welshes' ability to prove liability, and especially damages, could be devastated by the exclusion of their expert witnesses.

*Id.*

¶ 19 In *Welsh*, an unusual fact situation, including a significant clerical error by a member of the court's staff, supported the conclusion that the trial court had erred by denying the motion to extend the expert disclosure deadline. Here, in contrast, the trial court found that Client had willfully delayed moving the case forward and disobeyed the court's orders. Given the broad discretion that trial courts have to manage their cases and the circumstances of the case at hand, we cannot conclude that the court abused its discretion when it denied Client's motion to extend the time for her expert disclosures and her motion for leave to amend her expert reports.

---

5. In *Dugan v. Jones*, 615 P.2d 1239 (Utah 1980), the trial court ordered the parties to exchange the names of expert witnesses at least fifteen days before trial. *See id.* at 1244. When the defendants failed to timely provide an expert witness list, the court prohibited the defendants from presenting any expert witness testimony at trial. *See id.* The Utah Supreme Court reversed, holding that the trial court had abused its discretion by excluding testimony from the defendants' experts. *See id.* The Supreme Court based its decision on the following factors: (1) the prejudicial effects of preclusion were severe, (2) the court's order to disclose witnesses was never reduced to writing, (3) the matter was tried before the court rather than a jury, and (4) the court had means other than exclusion of witnesses to sanction the defendants. *See id.* at 1244–45.

¶ 20 Client also argues that the trial court abused its discretion by denying her motion to allow her experts to testify at trial "even if the extension of time was not granted." *See Welsh*, 2010 UT App 171, ¶ 10, 235 P.3d 791 ("'On occasion, justice and fairness will require that a court allow a party to designate witnesses, conduct discovery, or otherwise perform tasks covered by a scheduling order after the court-imposed deadline for doing so has expired.'") (quoting *Boice v. Marble*, 1999 UT 71, ¶ 10, 982 P.2d 565). In support of this argument, Client again contends that she had timely disclosed her expert witnesses and that she was unjustifiably prejudiced by the court's ruling because excluding her experts from testifying dictated the outcome of the case. In addition, Client contends that the motion to allow her experts to testify at trial was not a mere motion for reconsideration of the court's previous order as the trial court implied.

¶ 21 The trial court denied Client's motion to allow her experts to testify at trial, stating that "as a natural result, [striking the experts' reports] disallows [the experts'] testimony. You can't put [the experts] on [to testify] if [the opposing party hasn't] had notice." Client's counsel argued in response that, because the court "did not make that statement at the hearing[, t]he Court has not ruled on that issue."

¶ 22 We agree with the trial court's reasoning and its denial of Client's motion to allow her experts to testify at trial. Under rule 37(f),

> [i]f a party fails to disclose a witness, document or other material as requested by Rule 26(a) ... that party *shall not be permitted* to use the witness, document or other material at any hearing unless the failure to disclose is harmless or the party shows good cause for the failure to disclose.

Utah R. Civ. P. 37(f) (emphasis added). Thus, where a party does not timely file expert disclosures, the court will ordinarily exclude the party's expert from testifying at trial on the matters the party was required to disclose. *See id.* Indeed, the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that the violation of rule 26(a) was either justified or harmless. *See id.* Client's contention that she could reasonably argue that the expert witnesses should be allowed to testify at trial, even though the court had stricken the expert witnesses' reports, ignores the plain language of rule 37(f). As the court and Lawyer both observed, the language of rule 37(f) makes the filing of adequate expert reports a condition precedent to testimony by the experts at trial,[6] "unless the failure to disclose is harmless or the party shows good cause for the failure to disclose." Utah R. Civ. P. 37(f). Here, the court expressly found that neither of those exceptions was applicable.

¶ 23 The trial court did not err by granting Lawyer's motion to strike and denying Client's motions to extend the time to file expert disclosures or to allow her leave to amend. Consequently, the court did not abuse its discretion by denying Client's motion to allow her experts to testify at trial, given Client's failure to comply with rule 26(a)(3)(B).

## II. Motions Relating to Fact Discovery

¶ 24 Client next argues that the trial court abused its discretion by denying Client's motion to extend the deadline for fact discovery and by granting Lawyer's motion for a protective order.

### A. Motion to Extend the Fact Discovery Deadline

¶ 25 Client argues that the trial court's refusal to extend the fact discovery deadline was an abuse of discretion because (1) Client requested the extension more than twelve months before a trial date was set and more than eighteen months before trial, so

---

6. Client argues that the trial court cannot exclude her experts as a sanction because Lawyer did not comply with rule 37(a), which requires parties to confer on discovery disputes before seeking sanctions. *See* Utah R. Civ. P. 37(a)(2)(A). As previously noted, however, the exclusion of witnesses based on rule 37(f) is not a sanction but an express mandate of that rule given Client's failure to provide adequate expert witness reports in compliance with rule 26(a)(3). *See* Utah R. Civ. P. 26(a)(3).

sufficient time remained for fact discovery; (2) the court ignored substantial prejudice to Client and overstated the potential prejudice to Lawyer; and (3) Client had "understandably held off on [her] factual discovery efforts" until Lawyer's motion to disqualify was resolved.[7] Client contends that her decision to delay initiating discovery while the disqualification motion was pending, in addition to the fact that no trial date had been set when she sought to extend the fact discovery deadline, constituted good cause to amend the discovery deadline. She also refers generally to the purpose of discovery and contends that the trial court should have exercised its discretion in favor of allowing factual discovery so that the court could determine the facts and resolve the issue fairly.

¶ 26 The deadline for fact discovery was April 8, 2008. Client initially suggested this deadline in a proposed scheduling order on November 2, 2007,[8] and Lawyer promptly agreed to it. Lawyer filed his motion to disqualify on November 21, 2007. Client did not move to amend the scheduling order at that time. The trial court approved the stipulated scheduling order on January 4, 2008, at which time the motion to disqualify had been pending for about six weeks. The motion to disqualify was withdrawn on February 6, 2008, leaving Client two months until the scheduled deadline for the completion of fact discovery. Client did not initiate discovery at that time,[9] nor did Client file a motion

to amend the fact discovery deadline at that time. In fact, Client did not initiate any discovery until April 7, 2008, the last day of the fact discovery period and sixty days after the motion to disqualify was resolved. And Client did not file a motion to amend the discovery schedule until May 15, 2008, more than one month after the fact discovery deadline had come and gone.

¶ 27 The trial court stated at the August 2008 hearing that nothing had prevented Client from going forward with discovery and yet Client did not do anything, nor did Client inform the court of any problems until after Lawyer filed his motion for summary judgment. The court found that Client had been dilatory and that her request for an extension of the fact discovery deadline was "not founded in fact or in reason."

■ ¶ 28 Again, it was Client who drafted the original scheduling order that provided for a period of about five months for completion of fact discovery. In spite of Client's decision to delay initiating discovery until the day of the discovery deadline, Client did not request an extension of the fact discovery deadline until about five weeks *after* the deadline. A party cannot sleep on her rights and just hope for a favorable outcome. Under these circumstances, we conclude that the court did not abuse its discretion by denying Client's motion to extend the deadline for fact discovery. *See Welsh v. Hospi-*

---

7. Client also argues for the first time on appeal that the doctrine of equitable estoppel protects her decision to wait to initiate discovery while the motion to disqualify was pending. Utah courts define equitable estoppel as "conduct by one party which leads another party, in reliance thereon, to adopt a course of action resulting in detriment or damage if the first party is permitted to repudiate his conduct." *United Am. Life Ins. Co. v. Zions First Nat'l Bank*, 641 P.2d 158, 161 (Utah 1982). "The purpose of estoppel is to rescue from loss a party who has, without fault, been deluded into a course of action by the wrong or neglect of another." *Salt Lake City Corp. v. Big Ditch Irrigation Co.*, 2011 UT 33, ¶ 40, 258 P.3d 539 (emphasis omitted) (citation and internal quotation marks omitted). Generally, application of equitable estoppel is reserved for instances of wrongdoing by the estopped party. *See id.*

Here, Lawyer's filing of a motion to disqualify does not constitute a "wrongdoing," and Client's

choice to delay initiating discovery reflected a strategic decision on the part of Client. Client cannot reasonably argue that the disqualification motion "deluded" her into delaying discovery; therefore, her reliance on the doctrine of equitable estoppel is unfounded.

8. We note that this five-month discovery period proposed by Client is shorter than the 180 to 240 days that Client subsequently argued should be the minimum period for fact discovery. *See* Utah R. Civ. P. 26 advisory committee notes.

9. Client's counsel testified at the August 2008 hearing that his failure to begin discovery was "attributable to our calendaring of discovery for after March 16 which was the date that this had been set for hearing regarding the [disqualification] motion." Counsel acknowledged to the trial court that this did not "sound good" but stated that his diligence and cooperation in answering discovery requested by Lawyer showed that he was not trying to delay the matter.

*tal Corp. of Utah,* 2010 UT App 171, ¶ 9, 235 P.3d 791 ("Trial courts have broad discretion in managing the cases assigned to their courts.") (citation and internal quotation marks omitted).

### B.   Motion for Protective Order

¶ 29 Client also argues that the trial court abused its discretion when it granted Lawyer's motion for protective order.   Client states that "this case turned on the strength of the claims of each party as to the events on November 2, 2006," [10] and that she was prejudiced at trial because she was not able to discover the facts surrounding Lawyer's claims.   As Lawyer points out, however, nothing prevented Client from conducting discovery, yet—unlike Lawyer—she chose not to do so.   Furthermore, Client could have asked the court to stay the case pending resolution of the disqualification motion or she could have filed a timely motion to extend the discovery deadline, yet she did neither.   Instead, Client submitted her initial discovery requests to Lawyer on April 7, 2008, the date by which the scheduling order stated that fact discovery "shall be completed" and, five weeks later, filed a motion to extend the fact discovery deadline.

¶ 30 Lawyer's motion for protective order argued that the trial court should not require him to respond to the discovery request because Lawyer could not do so before the fact discovery deadline, i.e., the date on which fact discovery was to be complete.   The court granted the motion, stating as follows:

> The [Scheduling Order states] that fact discovery shall be completed no later than April 7, 2008.   And I emphasize the words "fact discovery shall be completed."   It's not "fact discovery shall be sent out."   It is fact discovery shall be completed and I believe that's the language that's actually

used in the rule which contemplates you send it out early enough that you get your answers back.... [M]y experience in this court is that everyone treats this as a completion date.   It's written as a completion date, not as a "we shall send it out by this date" and that's the way I read this here[.]

The court subsequently denied Client's motion to extend, stating that Client "failed in her efforts or non-efforts really to take care of the discovery issues" and that nothing in the record "justifies the fact that [Client] did nothing until the last day of the discovery period."

¶ 31 During oral argument, Client's counsel stated that no Utah authority supports the trial court's interpretation that the opposing party must have time to respond before the deadline.   Specifically, counsel stated that the trial court's granting of the protective order constituted legal error because "no rule in Utah ... requires that *fact discovery be complete* by the end of the scheduling order deadline." (Emphasis added.)

¶ 32 Utah Rule of Civil Procedure 26 does not define the phrase "when discovery should be completed," *see* Utah R. Civ. P. 26(f)(2)(B) (stating that the scheduling plan shall include the date "when discovery should be completed"), nor does that rule otherwise explain the meaning of the word "completed."   We interpret statutes and rules according to their plain meaning and "need not look beyond the plain language unless we find some ambiguity." *State v. MacGuire,* 2004 UT 4, ¶ 15, 84 P.3d 1171.   "[W]hen the words of a statute consist of common, daily, nontechnical speech, they are construed in accordance with the ordinary meaning such words would have to a reasonable person familiar with the

**10.**   On November 2, 2006, the trial court in the underlying divorce case held a hearing on whether to grant a temporary restraining order (TRO) filed by Client's husband.   The court had already entered an ex parte TRO in favor of Client's husband that included, among other terms, temporary surrender of custody of Client's children.   Client contends that, prior to the hearing, Lawyer informed her that there was insufficient time to prepare for the hearing and that he wanted to seek a continuance of two weeks.   As a result,

Lawyer told Client that she need not appear at the November 2 hearing.

At the hearing, Lawyer entered into a stipulation that adopted the restrictions in the ex parte TRO for an indefinite time in addition to other restrictions on Client.   Lawyer contends that he did so with Client's informed consent.   Client contends that Lawyer entered into the stipulation outside of her presence and without informing her of the stipulation's proposed terms.

usage and context of the language in question." *Olsen v. Eagle Mountain City,* 2011 UT 10, ¶ 9, 248 P.3d 465 (citation and internal quotation marks omitted). For this reason, courts often refer to the dictionary to define terms. *See Keene v. Bonser,* 2005 UT App 37, ¶ 10, 107 P.3d 693.

¶ 33 In this case, the phrase "should be completed" is not ambiguous. The definitions of the word "complete" include "possessing all necessary parts, items, components, or elements: not lacking anything necessary" and "to make whole, entire, or perfect: end after satisfying all demands or requirements." *Webster's Third New International Dictionary* 465 (1993). Thus, because the nature of discovery contemplates answers as well as questions, the phrase "when discovery should be complete[ ]" expresses the sense that both questions and answers must be provided in order for discovery to be "complete." The trial court's reasoning and conclusion reflect this common sense understanding of the language used in the scheduling order and rule 26(f)(2)(B).

¶ 34 The Utah Rules of Civil Procedure allow parties thirty days to respond to interrogatories and requests for production. *See* Utah R. Civ. P. 33(b)(3), 34(b)(2). Thus, it would be inappropriate and untimely under the Utah Rules of Civil Procedure to serve a discovery request on the eve of the discovery deadline, or indeed within thirty days of the discovery deadline, because the responding party would not have adequate time to respond, i.e., to complete discovery in the time permitted by rule. We therefore conclude that a discovery request must be served early enough that the responding party will have a full thirty days in which to respond before the discovery deadline.[11]

¶ 35 We hasten to add that we do not construe the concept of "completeness" narrowly, requiring that every "i" be dotted and every "t" be crossed before discovery can be considered complete. Instead, considering ordinary usage of the word and the purpose of discovery, we suspect that substantial completeness would satisfy the "completeness" requirement. Thus, provided the inquiring party submits his discovery requests early enough to allow the responding party thirty days to respond, if the responding party subsequently delays answering by interposing objections or incomplete answers, that fact will not save the responding party from being required to fully comply with discovery requests which were timely initiated, notwithstanding the expiration of any scheduled deadlines.

---

**11.** We are aware of no Utah decision that directly addresses this question. However, "[t]o the extent Utah Rules of Civil Procedure are similarly worded to the Federal Rules, federal rules and cases may be used to interpret them." *Kunzler v. O'Dell,* 855 P.2d 270, 273 n. 1 (Utah Ct.App. 1993) (citing *First Sec. Bank v. Conlin,* 817 P.2d 298, 299 (Utah 1991)). *See State v. Rothlisberger,* 2004 UT App 226, ¶ 14, 95 P.3d 1193 (stating that when Utah courts have not definitively addressed an issue, it is appropriate for us to turn for guidance to decisions and commentators that interpret the related federal rules), *aff'd,* 2006 UT 49, 147 P.3d 1176.

The relevant Federal Rules of Civil Procedure on scheduling plans and time to respond to interrogatories and requests for production are substantially similar to the Utah Rules of Civil Procedure. *See* Fed.R.Civ.P. 26(f)(3)(B) ("A discovery plan must state the parties' views and proposals on ... when discovery should be completed[.]"); Fed.R.Civ.P. 33(b)(2), 34(b)(2)(A) (allowing parties thirty days to respond to interrogatories and requests for production, respectively).

Federal court decisions are consistent with our conclusion. In *Thomas v. Pacificorp,* 324 F.3d 1176 (10th Cir.2003), the court stated that "requests [for discovery] must be served at least thirty days prior to a completion of discovery deadline." *Id.* at 1179. Other federal cases have reached similar conclusions. *See, e.g., Sofo v. Pan–American Life Ins. Co.,* 13 F.3d 239, 241–42 (7th Cir.1994) (holding that court did not abuse its discretion by granting defendants a protective order where plaintiff failed to request discovery until nine days before the deadline); *Chevola v. Cellco P'ship,* No. 8:06–CV–1312–T–30MAP, 2007 WL 3379779, *1 (M.D.Fla. Nov. 14, 2007) ("This district follows the rule that the completion date for discovery means just that-all discovery must be completed by that date.... Hence, interrogatories, as an example, must be served more than thirty days prior to the completion date to permit the opposing party to respond before the discovery deadline.") (emphasis omitted). *But see Larue v. Portis,* No. 00–0177, 2001 WL 912529, *2 (Iowa Ct.App. Aug. 15, 2001) (construing Iowa's rules regarding discovery and stating that "nothing in the rules requires that service [of discovery requests] occur at least thirty days prior to a discovery deadline.... They provide only that a party has thirty days in which to respond.").

¶ 36 We acknowledge that this construction of what it means for discovery to be "complete" leaves the trial court some leeway in determining whether parties have complied with the language and spirit of the rule. However, under no circumstances does the concept that discovery must be complete by a given deadline contemplate that a party has complied by initiating discovery on the day of the deadline, i.e., on the day when discovery was to be "complete." Therefore, we agree with the trial court that Client's propounding of interrogatories on April 7, 2008, violated the discovery deadline provided in the scheduling order. Under the circumstances of this case, then, we conclude that the court did not abuse its discretion by granting Lawyer's motion for a protective order.

### III. Award of Attorney Fees

¶ 37 Client next argues that the trial court erred by awarding Lawyer attorney fees related to Client's motion to allow expert testimony at trial. In its order granting attorney fees, the trial court referred to both its "statutory power under Utah Code Ann. § 78B–5–825 to award reasonable attorney fees and costs" and its "inherent equitable power to award reasonable attorney fees and costs when it deems appropriate in the interest of justice and equity." It then stated as follows: "Utilizing these statutory and equitable powers, the Court grants [Lawyer his] reasonable attorneys' fees and costs incurred in defending against [Client]'s Motion to Allow Expert Testimony at Trial and in bringing their own motion for recovery of such fees and costs."

¶ 38 Client contends that neither of the grounds relied on by the trial court provide a basis for the attorney fee award. Client also states that the court could not award fees under rule 11 of the Utah Rules of Civil Procedure because Lawyer did not comply with the requirements of the rule.

¶ 39 Client first contends that Utah Code section 78B–5–825 does not authorize the fee award because it applies only to "actions," not motions. *See* Utah Code Ann. § 78B–5–825(1) (2008) ("In civil actions, the court shall award reasonable attorney fees to a prevailing party if the court determines[,]" with exceptions not applicable here, "that the action or defense to the action was without merit and not brought or asserted in good faith[.]").

¶ 40 Lawyer responds that the trial court properly awarded attorney fees pursuant to section 78B–5–825. In support, Lawyer relies on *Rohan v. Boseman,* 2002 UT App 109, 46 P.3d 753, *cert. denied,* 59 P.3d 603 (Utah 2002), in which this court affirmed an award of fees based on both the court's inherent powers and the predecessor to section 78B–5–825, *see* Utah Code Ann. § 78–27–56 (1996) (current version at Utah Code Ann. § 78B–5–825 (2008)). *See Rohan,* 2002 UT App 109, ¶¶ 33, 41, 46 P.3d 753. In that case, the plaintiff challenged the trial court's conclusion that " 'the action' was without merit as a matter of law." *Id.* ¶ 37. The reviewing court explained that "the trial court did not find that the underlying negligence action was without merit. Rather, the court concluded that the Bosemans were entitled to fees and costs caused by Rohan's refusal to prosecute the case, as his refusal to prosecute was without merit and in bad faith." *Id.* The reviewing court also agreed with the trial court that the plaintiff's renewed *motion* based on a federal statute was frivolous and without basis in law or fact and that the evidence supported the trial court's finding that the plaintiff had acted in bad faith. *See id.* ¶¶ 37, 40. As a result, the court concluded that the trial court did not err by awarding attorney fees. *See id.* ¶ 41.

¶ 41 The *Rohan* opinion gives no indication that the plaintiff challenged the applicability of the relevant statute based on the fact that the trial court had considered only a motion rather than the entire "action." Instead, the plaintiff challenged the evidentiary bases for the trial court's conclusions that the plaintiff's refusal to prosecute and his renewed motion for a continuance showed lack of merit and bad faith. Thus, we are not persuaded that *Rohan* supports Lawyer's argument that Utah Code section 78B–5–825 applies here.

¶ 42 The plain language of section 78B–5–825 expressly limits the award of attorney fees to situations where a party

prevails with regard to an "action." *See Arbogast Family Trust v. River Crossings, LLC,* 2010 UT 40, ¶ 18, 238 P.3d 1035 (stating that the court interprets statutes and rules according to their plain language). Rule 3 of the Utah Rules of Civil Procedure clarifies the meaning of the word "action" when it states that "[a] civil action is commenced (1) by filing a complaint with the court, or (2) by service of a summons together with a copy of the complaint[.]" Utah R. Civ. P. 3(a). Thus, "action" is a term of art, basically meaning a lawsuit, and a motion—an optional part of a lawsuit—clearly does not equate to an "action." Here, Lawyer prevailed on the matter at issue when the trial court denied Client's *motion* to allow expert witnesses to testify. Accordingly, section 78B–5–825, which by its plain language applies to "actions," does not authorize the court's award of attorney fees based on Client's motion, and we conclude the court erred by relying on it.

¶ 43 Client next argues that the trial court's equitable powers do not provide a basis for the award of fees. "Ordinarily attorney fees are awarded only if authorized by a statutory or contractual provision." *Rohan,* 2002 UT App 109, ¶ 34, 46 P.3d 753 (citation and internal quotation marks omitted). However, "a court has inherent equitable power to award reasonable attorney fees when it deems [it] appropriate in the interest of justice and equity." *Id.* (citation and internal quotation marks omitted). Client contends that none of the recognized exceptions to the general rule that a prevailing party is only entitled to attorney fees when authorized by contract or statute apply in this case. Lawyer responds that courts have inherent power "to impose monetary sanctions on attorneys who by their conduct thwart the court's scheduling and movement of cases through the court." *Barnard v. Wassermann,* 855 P.2d 243, 249 (Utah 1993). Lawyer refers specifically to the facts that (1) Lawyer incurred attorney fees in connection with Client's duplicative motion and (2) "the trial court had already found [that Client and Client's counsel had] willfully failed to obey orders of the court."

¶ 44 Lawyer's argument that the trial court has authority to award attorney fees when an attorney has delayed the progress of a case is not persuasive because the award of fees here was not based on scheduling issues or Client's delay. Instead, the trial court found that (1) Client's motion to allow her experts to testify at trial raised "issues materially identical to those already decided in the context of the Motion to Strike" and (2) the motion was "frivolous." While the court's order mentioned "a willful failure on the part of [Client] to carry this case forward and to obey the orders of the Court," that reference to Client's dilatory conduct referred to the court's ruling on the motion to strike, not the motion to allow the experts to testify. Thus, the award of attorney fees was not based on scheduling concerns but on the frivolous nature of the relevant motion.

¶ 45 While it is true that trial courts have broad equitable power to award fees, we believe courts should limit the exercise of their equitable power to those situations that are not comprehensively dealt with by statute, *see, e.g.,* Utah Code Ann. § 78B–5–825 (2008), or by rule, *see, e.g.,* Utah R. Civ. P. 11. In circumstances where a rule or statute authorizes the court to sanction a party, the court should not invoke its equitable power to shortcut the procedures and requirements outlined in the statutes and rules. Because rule 11 of the Utah Rules of Civil Procedure provided the appropriate vehicle for evaluating Lawyer's request for attorney fees in this instance, we conclude that the court erred by awarding fees in the exercise of its equitable powers rather than as circumscribed by rule 11.

¶ 46 Although the trial court did not suggest rule 11 as a basis for its award of attorney fees as a sanction, Client raised this issue in her brief, stating that Lawyer cannot seek attorney fees as a sanction under Utah Rule of Civil Procedure 11 because he did not comply with the requirements of the rule. We agree.

¶ 47 Rule 11 sets forth a detailed procedure that a party seeking a sanction for

violation of the rule must follow.[12] *See* Utah R. Civ. P. 11(c)(1)(A). We have stated that "the movant must strictly comply with rule 11's requirement that the rule 11 motion be served on opposing counsel as a precondition to filing the motion with the court." *Barnard v. Mansell*, 2009 UT App 298, ¶ 7, 221 P.3d 874. Here, Lawyer sent Client an email message explaining the deficiencies of her expert disclosures before he filed his motion for attorney fees with the court. In *Barnard*, we expressly stated that a letter cannot substitute for a formal motion to satisfy the requirement that the rule 11 motion be served on opposing counsel as a precondition to filing the motion with the court. *See id.* ¶ 8. If a party does not comply with the procedural requirements of rule 11, she will not be entitled to attorney fees on that basis.[13] *See id.* ¶ 7. Because Lawyer did not strictly comply with the requirement that a rule 11 motion be served upon Client before Lawyer filed the motion with the court, the court's award of attorney fees cannot be validated under rule 11. Accordingly, we vacate the attorney fee award.

## CONCLUSION

¶ 48 The trial court did not abuse its discretion by granting Lawyer's motion for a protective order or Lawyer's motion to strike Client's expert witnesses without extending the time for expert disclosures or giving Client leave to amend the expert witness reports. Nor did the court err by denying Client's motion to allow her expert witnesses to testify at trial, her alternative motion to extend the deadline to amend expert disclosures, or her motion to extend factual discovery. However, the court had no authority to award Lawyer attorney fees under Utah Code section 78B-5-825 or pursuant to its equitable powers, and Lawyer's motion for attorney fees did not comply with the procedural requirements of rule 11 of the Utah Rules of Civil Procedure. Accordingly, we vacate the award of attorney fees.

¶ 49 WE CONCUR: J. FREDERIC VOROS JR. and MICHELE M. CHRISTIANSEN, Judges.

---

**12.** "The formalities associated with a rule 11 motion encourage only well-taken, well-supported requests for sanctions and discourage the casual use of threats to seek rule 11 sanctions as a litigation tactic." *Barnard v. Mansell*, 2009 UT App 298, ¶ 8, 221 P.3d 874.

**13.** As we have previously noted, "[t]his interpretation of the rule is consistent with the majority view." *Barnard v. Mansell*, 2009 UT App 298, ¶ 7 n. 2, 221 P.3d 874 ("[A] failure to comply with [rule 11's procedural requirements] will result in the rejection of the motion for sanctions[,] as many cases since the 1993 amendment have stated or held.") (footnote omitted) (quoting 5A Wright & Miller, Federal Practice and Procedure: Civil 3d § 1337.2, at 723 (2004)).