2014 UT App 200

# THE UTAH COURT OF APPEALS

GARY MARTIN AND BETHANN MARTIN,
Plaintiffs and Appellees,
*v.*
SHANE RASMUSSEN AND TERRILYN RASMUSSEN,
Defendants and Appellants.

Opinion
No. 20121058-CA
Filed August 21, 2014

Third District Court, West Jordan Department
The Honorable Charlene Barlow
No. 100424681

Bruce M. Pritchett Jr., Attorney for Appellants

Michael C. Van, Clay A. Alger, and Robert T.
Spjute, Attorneys for Appellees

JUDGE JOHN A. PEARCE authored this Opinion, in which JUDGES
GREGORY K. ORME and J. FREDERIC VOROS JR. concurred.

PEARCE, Judge:

¶1     Shane and Terrilyn Rasmussen appeal from the district court's order enforcing a settlement offer that they had made to Gary and Bethann Martin pursuant to rule 68 of the Utah Rules of Civil Procedure. The district court's order also awarded attorney fees to the Martins pursuant to Utah Code section 78B-5-825. We affirm the district court's enforcement of the settlement offer but reverse its attorney fee award.

BACKGROUND

¶2     The Rasmussens live next door to the Martins in Sandy, Utah. The Martins have owned their property since 2005. The Rasmussens purchased their property, which a developer had been using as a model home, in 2009. When the Rasmussens purchased the home, they were aware that the Martins believed that a fence the developer had erected between the two properties encroached upon the Martins' property line by five feet. Indeed, the Martins ensured that any potential buyer would be aware of their dispute with the developer by hanging a banner advertising their contention that the fence was misplaced. The developer assured the Rasmussens that the fence was properly located on the model home property. The developer also referred the Rasmussens to the plat map, which satisfied them that the fence was on their side of the boundary.

¶3     Thereafter, the Martins and the Rasmussens engaged in an increasingly rancorous disagreement about the fence and the property line. Their dispute resulted in litigation when the Martins sued the Rasmussens in 2010. The Martins' complaint asserted nine causes of action, including a quiet title claim regarding the disputed five-foot strip of land, as well as causes of action for assault, intentional infliction of emotional distress, and malicious prosecution. The Martins additionally sought punitive damages and attorney fees. The Rasmussens filed an answer, and later an amended answer, denying substantially all of the Martins' allegations and asserting twelve counterclaims, including defamation, intentional infliction of emotional distress, and abuse of process.

¶4     On June 11, 2012, the Rasmussens made an offer of judgment pursuant to rule 68 of the Utah Rules of Civil Procedure. The Rasmussens' offer proposed to resolve the litigation by transferring four feet of the disputed five-foot strip of land to the Martins. Specifically, the offer provided,

(1) The Rasmussens will convey to the [Martins] 4 feet of the disputed "5-Foot Strip" . . . . This conveyance will be by quitclaim deed.
(2) Neither party will pay the other party anything else, or undertake to perform any other act for the other party.
(3) The foregoing terms will constitute a full and final resolution of all claims between the parties.
(4) This offer will remain open until 5:00 pm MDT on Monday, June 25, 2012, at which time it will automatically expire by its terms.

Notwithstanding the offer's express June 25 expiration date, the Rasmussens attempted to revoke the offer on June 22 and replace it with an offer that would convey only a two-foot strip of the disputed land to the Martins. However, on June 25, the Martins accepted the original four-foot offer. Shortly thereafter, they filed a motion entitled Plaintiffs' Motion to Enforce Offer of Judgment Pursuant to Rule 68. *See* Utah R. Civ. P. 68(c) ("Upon acceptance, either party may file the offer and acceptance with a proposed judgment . . . .").

¶5     The Rasmussens opposed the motion to enforce, arguing that they had revoked their original offer before the Martins accepted it. The Rasmussens also argued that the four-foot offer was illegal because if they conveyed four feet of their property, they would violate a Sandy City zoning ordinance mandating a 20,000-square-foot minimum lot size. The district court ruled that the Rasmussens' original offer was irrevocable under rule 68 of the Utah Rules of Civil Procedure. The district court also rejected the Rasmussens' illegality argument, concluding that the Rasmussens should have considered the zoning requirements before making their offer and that "a variance can be sought from Sandy City in order to relieve [the Rasmussens] from the consequences of their offer." Accordingly, the district court entered an order enforcing the Rasmussens' original offer and requiring the Rasmussens to convey four feet of the disputed strip of land to the Martins.

¶6      The district court also awarded the Martins the attorney fees they had incurred enforcing the offer. The district court justified its attorney fee award with a finding that "[the Rasmussens'] opposition to the motion [to enforce] is without merit and the rule 68 offer was made in bad faith." The Martins' counsel filed an affidavit of attorney fees to support the claimed fees, but the document was not notarized. When this deficiency was brought to his attention, the Martins' counsel promptly filed a properly notarized affidavit. That same day, the district court awarded the Martins attorney fees in the amount of $24,416.44.

¶7      The Rasmussens now appeal from the district court's final order determining that the original rule 68 offer was enforceable, awarding attorney fees, and dismissing the case with prejudice.


ISSUES AND STANDARDS OF REVIEW

¶8      The Rasmussens argue that the district court erred in ordering them to perform under their original rule 68 settlement offer because it compelled the Rasmussens to violate Sandy City zoning ordinances. They also argue that the district court's instruction that they could comply with the zoning ordinances by obtaining a variance contradicts the settlement offer's provision that "[n]either party will . . . undertake to perform any other act for the other party." These issues present questions of law, the district court's resolution of which we review for correctness. *See LD III, LLC v. BBRD, LC*, 2009 UT App 301, ¶ 13, 221 P.3d 867 ("Issues of formation, construction, and enforceability of a settlement agreement are governed by state contract law . . . ." (citation and internal quotation marks omitted)).

¶9      The Rasmussens also challenge the district court's award of attorney fees to the Martins, arguing that the Rasmussens' opposition to the motion to enforce did not lack merit and that the fee award was not supported by sufficient findings and a valid fee affidavit. "Whether attorney fees should be awarded in a particular

case is a question of law, reviewed for correctness." *Purkey v. Roberts*, 2012 UT App 241, ¶ 12, 285 P.3d 1242 (citation and internal quotation marks omitted); *see also North Fork Special Serv. Dist. v. Bennion*, 2013 UT App 1, ¶ 14, 297 P.3d 624 ("The trial court's determination that an action lacks merit . . . is a question of law, which we review for correctness." (omission in original) (citation and internal quotation marks omitted)).

ANALYSIS

I. Enforcement of the Settlement Offer

¶10    The Rasmussens first argue that the district court erred in ordering them to perform under their original rule 68 settlement offer because they believe they cannot do so without committing a criminal offense. If the Rasmussens transfer the four-foot strip of property, the size of their lot will fall to under 20,000 square feet. The Rasmussens argue that this would violate a Sandy City zoning ordinance mandating a minimum lot size. A violation of the zoning ordinances constitutes a Class C misdemeanor and, thus, a criminal offense. *See* Sandy City, Utah, Land Development Code § 15A-02-01(C) (2008).

¶11    "A court may not by its ruling entreat a party to take criminal action." *Peterson v. Sunrider Corp.*, 2002 UT 43, ¶ 40, 48 P.3d 918. The Utah Supreme Court has explained that, although a contract is not automatically unenforceable merely because it violates a statute or other law, "[it] must be held unenforceable if enforcement would compel the party seeking to avoid the contract to violate a penal statute." *Id.* Relying on these statements, the Rasmussens argue that the settlement offer cannot be enforced because it requires them to run afoul of the Sandy City zoning ordinances and thereby commit a Class C misdemeanor. *See id.* ¶¶ 40–41 (holding that a contract was unenforceable if, on remand, the trial court determined that the contract required a party to commit a felony).

¶12    The district court's ruling recognized, however, that the Rasmussens could seek a variance from the minimum lot size requirement. Sandy City provides a procedure for obtaining such a variance. *See* Sandy City, Utah, Land Development Code § 15A-35-02 (2008). Further, the Martins presented affidavit evidence that during their previous negotiations with the developer, Sandy City had indicated that it "would grant a variance, unless [the Martins] did not agree to the variance."[1]

¶13    Despite the potential availability of a variance—and Sandy City's apparent willingness to grant a variance—the Rasmussens insist that "it would be repugnant to the law to have the court itself order parties to commit criminal violations." This assertion ignores the legal significance of a variance. Pursuant to the Sandy City Land Development Code, the variance procedure allows a landowner to seek "a waiver or modification of the requirements of the land use ordinance as applied to a parcel of property." Sandy City, Utah, Land Development Code § 15A-35-02(A). Once such a "waiver or modification" is in place, the relevant zoning provision no longer applies to the affected parcel. Thus, if the Rasmussens can secure a variance to the minimum lot size requirement, their compliance with the settlement offer would not violate the Sandy City Land Development Code.

¶14    In light of the potential availability of a zoning variance, the district court did not err in requiring the Rasmussens to perform as they had promised in their original rule 68 settlement offer. Courts have recognized that parties who contract to perform an act that would violate a zoning ordinance can be expected to avail

---

1. In the same affidavit, the Martins averred that the City Attorney reiterated at a 2008 meeting "that Sandy City would not enforce their zoning requirements . . . as long as the parties reached a settlement and a variance was agreed to by [the Martins]." The Rasmussens have not argued on appeal that these statements were inadmissible as hearsay or for any other reason.

themselves of variance procedures so that they can perform their contractual obligations and comply with the law. *See Young v. Texas Co.*, 331 P.2d 1099, 1100–01 (Utah 1958) (stating that parties' illegal intent cannot be inferred from "a zoning ordinance which makes the contemplated use illegal at the time the lease is executed . . . where it is possible to obtain a change in the zoning ordinance so that the use can be made legal"); *12 Havemeyer Place Co. v. Gordon*, 820 A.2d 299, 308 (Conn. App. Ct. 2003) ("'Parties may bind themselves to a contract that calls on its face for a use of property that violates the zoning laws because, due to the possibility of obtaining a variance, such a bargain is not against public policy or public morals.'" (quoting *Entrepreneur, Ltd. v. Yasuna*, 498 A.2d 1151, 1158 (D.C. 1985))); *cf. L.C. Canyon Partners, LLC v. Salt Lake Cnty.*, 2011 UT 63, ¶ 13, 266 P.3d 797 (relying, in part, on the existence of a variance procedure to reject due process challenge to minimum lot size requirement).

¶15 The Rasmussens argue that this case is distinguishable from *Young v. Texas Co.*, 331 P.2d 1099 (Utah 1958), because the lease in *Young* expressly required the lessor to obtain any necessary variances. As the Rasmussens point out, the Utah Supreme Court has relied on this distinction to affirm a district court's refusal to enforce a lease that called for the use of property in violation of a zoning ordinance. *See Sine v. Rudy*, 493 P.2d 299, 300 (Utah 1972) ("[In *Young*], both parties knew of the zoning restrictions, and one of them, as a term of the lease, agreed to obtain clearance thereof as part of the consideration,—quite dissimilar from the facts here.").

¶16 The absence of an express requirement that the Rasmussens obtain a variance does not preclude an application of *Young* to the facts of this case. *Sine v. Rudy* did not directly involve a challenge to the legality of the contract; rather, the "nub" of that case was "mistake, or possibly lack of consideration." *Id.* at 299. The relevant holding of *Young* is not that parties must contractually assign the responsibility to obtain a variance, but rather that the potential for a variance provides a safety valve for parties to attempt to comply

with the law and their contractual obligations. *See* 331 P.2d at 1100–01; *cf. Entrepreneur, Ltd.*, 498 A.2d at 1159 (stating that, in the absence of an express term, "it will be presumed [that] the parties contemplated that a license would be obtained" (alteration in original) (citation and internal quotation marks omitted)). Because the Rasmussens may seek a variance from the minimum lot size requirement, the district court's enforcement order does not "entreat [them] to take criminal action," *Peterson v. Sunrider Corp.*, 2002 UT 43, ¶ 40, 48 P.3d 918, and we will not reverse the district court's order on that basis.

¶17    The Rasmussens next argue that when the district court stated that they could seek a variance to cure the potential illegality, the court rewrote the settlement offer to insert a new, additional term. They also rely on the settlement offer's provision that "[n]either party will pay the other party anything else, *or undertake to perform any other act* for the other party." (Emphasis added.) The Rasmussens argue that obtaining a zoning variance would involve "'undertak[ing] to perform . . . other act[s]'" that were "expressly ruled out" in the settlement offer.

¶18    The Rasmussens cite case law for the proposition that a settlement agreement is a contract between the parties that the courts should not alter. For example, in a case involving the effect of a settlement agreement, the Utah Supreme Court has stated,

> It is a long-standing rule in Utah that persons dealing at arm's length are entitled to contract on their own terms without the intervention of the courts to relieve either party from the effects of a bad bargain. This Court will not rewrite a contract to supply terms which the parties omitted.

*Hal Taylor Assocs. v. Unionamerica, Inc.*, 657 P.2d 743, 749 (Utah 1982) (citations omitted); *see also Palmer v. Davis*, 808 P.2d 128, 132 (Utah Ct. App. 1991) ("This court cannot rewrite the contract because [the] appellant failed to include language to protect her

rights."). However, the district court did not rewrite the Rasmussens' settlement offer. As the Martins assert in their brief, the Rasmussens' argument ignores the full language of the relevant part of the offer. The offer does not strictly limit the Rasmussens' possible obligations to the property transfer. Rather, the offer precludes the Rasmussens from having to perform any additional actions "for the other party."

¶19 We see nothing in the settlement offer's language that would absolve the Rasmussens of responsibility to undertake whatever ancillary actions might be necessary to perform what they agreed to perform. If a zoning variance is necessary to fulfill the requirement that the Rasmussens complete the land transfer, then obtaining that variance is best viewed as part of the obligation to transfer the land, not as an additional undertaking. As a necessary aspect of the required land transfer, it is not "any other act" within the offer's language, and it is certainly not an act undertaken "for the other party." In these circumstances, the district court's observation that the Rasmussens could seek a zoning variance cannot be properly characterized as rewriting the settlement offer or adding additional or inconsistent terms.

¶20 We conclude that the settlement offer was not unenforceable due to illegality and that the district court did not impermissibly alter the terms of the offer. As these are the only arguments that the Rasmussens raise on appeal to challenge the district court's enforcement of the offer, we affirm the district court's enforcement order.[2]

---

2. The Rasmussens argued below that they had revoked their settlement offer before the Martins accepted it. The district court ruled that the express terms of rule 68 of the Utah Rule of Civil Procedure do not permit a party to revoke a settlement offer made under that rule. The Rasmussens do not appeal that portion of the ruling.

## II. Attorney Fees

¶21    The Rasmussens next challenge the district court's award of attorney fees to the Martins. The district court awarded the Martins "attorney fees for enforcing the settlement offer," which the court later determined to be $24,416.44. The district court reasoned that the Martins had prevailed, the Rasmussens' opposition to the enforcement of the offer of judgment was without merit, and "the rule 68 offer was made in bad faith." The Rasmussens argue that the fee award was inappropriate because their opposition to the enforcement motion had merit. They also argue that the district court failed to make factual findings about the reasonableness of the fees requested and that the award was not supported by a valid affidavit.

¶22    The district court did not expressly identify the source of its authority to grant attorney fees in this case, but the parties appear to agree that the fee award was made pursuant to Utah Code section 78B-5-825. *See generally Bilanzich v. Lonetti*, 2007 UT 26, ¶ 11, 160 P.3d 1041 ("Generally, attorney fees are awarded only when authorized by contract or by statute."). Section 78B-5-825 provides, with certain exceptions not applicable here, that "[i]n civil actions, the court shall award reasonable attorney fees to a prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith." Utah Code Ann. § 78B-5-825(1) (LexisNexis 2012). The district court's fee award tracked this statutory language, relying on the three elements of prevailing status, lack of merit, and bad faith.

¶23    Relying on section 78B-5-825, the Rasmussens argue that the district court erred in concluding that their opposition to the Martins' enforcement motion was without merit.[3] "In determining

---

3. The Rasmussens do not contend that Utah Code section 78B-5-825 is wholly inapplicable here because the district court was

(continued...)

whether there is merit to a claim, an appellate court focuses on whether the claim was 'frivolous or of little weight or importance having no basis in law or fact.'" *North Fork Special Serv. Dist. v. Bennion*, 2013 UT App 1, ¶ 56, 297 P.3d 624 (quoting *Warner v. DMG Color, Inc.*, 2000 UT 102, ¶ 22, 20 P.3d 868). If the Rasmussens are correct that their opposition to the enforcement motion had merit, then the attorney fee award must be reversed without consideration of the district court's finding that they acted in bad faith. *See id.* ("Where an appellate court finds as a matter of law that a party's claim has merit, it need not reach the second, factual 'bad faith' element of section 78B-5-825." (citing *In re Olympus Constr.*, 2009 UT 29, ¶ 8 n.1, 215 P.3d 129)).

¶24    We agree with the Rasmussens that their opposition to the enforcement motion cannot be deemed "without merit" for purposes of section 78B-5-825. Although their illegality argument was ultimately unsuccessful below and on appeal, it did not completely lack a basis in law or fact. The Rasmussens relied on the Utah Supreme Court's prohibition on the enforcement of contracts that compel the violation of a criminal law, *see Peterson v. Sunrider Corp.*, 2002 UT 43, ¶¶ 40–41, 48 P.3d 918, and provided the district court with additional federal authority applying the illegality

---

3. (...continued)

concerned only with their resistance to enforcement of the settlement they had offered and not with their defense of the action. Because the parties agree that section 78B-5-825 governs the propriety of the trial court's fee award in this case, we evaluate the award against the requirements of that section. We note, however, that "[t]he plain language of section 78B-5-825 expressly limits the award of attorney fees to situations where a party prevails with regard to an 'action.'" *Dahl v. Harrison*, 2011 UT App 389, ¶ 42, 265 P.3d 139; *see id.* (explaining that the word "action" as used in section 78B-5-825 "is a term of art, basically meaning a lawsuit, and a motion—an optional part of a lawsuit—clearly does not equate to an 'action'").

argument to a settlement reached under the federal version of rule 68, *see Perkins v. U.S. W. Commc'ns*, 138 F.3d 336, 340 n.5 (8th Cir. 1998). Below, the potential availability of a variance was not argued until the Martins raised it in their reply memorandum. The Rasmussens argued at the motion hearing that their ability to obtain a variance was speculative and that they should not be required "to go to some uncertain lengths to see if they can get around [the] illegality."[4] The Rasmussens also argued to the district court that they had effectively revoked their offer prior to its acceptance and that the court should not enforce the offer to avoid manifest injustice. In light of these considerations, the Rasmussens' opposition to the enforcement motion was not without merit, and the district court erred in concluding that it was.

¶25   Because we determine that the Rasmussens' opposition to the Martins' motion to enforce the settlement offer did not lack merit for purposes of Utah Code section 78B-5-825, we must reverse the district court's attorney fee award.[5] *See Bennion*, 2013 UT App 1, ¶ 56 (reversing attorney fee award where party's claims "were neither 'frivolous' nor 'of little weight or importance having no basis in law or fact'" (citation omitted)). As a result of this reversal, the Martins are not entitled to fees on appeal even if they could be deemed the prevailing party, because they have no longer received their attorney fees below. *See Robertson's Marine, Inc. v. I4*

---

4. The Martins did not identify *Young v. Texas Co.*, 331 P.2d 1099 (Utah 1958), as authority for their position that the variance procedure cured any illegality problem until they filed their brief with this court. When the Martins raised *Young* on appeal, the Rasmussens attempted to distinguish it with *Sine v. Rudy*, 493 P.2d 299 (Utah 1972), as discussed above. *See supra* ¶¶ 15–16.

5. Given our disposition of the attorney fee issue on this basis, we need not address the merits of the Rasmussens' argument that the attorney fee award was not supported by a valid affidavit and adequate findings of reasonableness.

*Solutions, Inc.,* 2010 UT App 9, ¶ 8, 223 P.3d 1141 ("The general rule is that when a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal." (citation and internal quotation marks omitted)).

¶26     The Martins have also requested attorney fees incurred on appeal under rule 33 of the Utah Rules of Appellate Procedure. *See* Utah R. App. P. 33(a) (allowing for the award of appellate attorney fees when an appeal is "frivolous"). In light of our determination that the Rasmussens' illegality argument does not lack merit and our resulting reversal of the district court's attorney fee award, the Rasmussens' appeal cannot be deemed frivolous. We therefore deny the Martins' request for fees under rule 33.

CONCLUSION

¶27     We conclude that the Rasmussens' settlement offer is not unenforceable for illegality even though it requires the Rasmussens to reduce their lot size below the minimum size Sandy City's zoning ordinances require. Sandy City has a variance procedure, and if the Rasmussens obtain a variance then there will be no violation of the zoning requirements and no criminal action by the Rasmussens. Further, the district court's reference to the variance procedure did not add a term to the Rasmussens' offer. However, the district court did err in awarding attorney fees under Utah Code section 78B-5-825, because the Rasmussens' opposition to the Martins' enforcement motion did not lack merit. For these reasons, we affirm the district court's enforcement of the Rasmussens' original rule 68 settlement offer, reverse the award of attorney fees below, and decline to award the Martins attorney fees on appeal.